Richard ROLLAND, Plaintiff
and Appellant,

v.

GRAND FORKS PUBLIC SCHOOL DIS-
TRICT NO. 1, a Public Corporation,
Defendant and Appellee.

Civ. No. 9574.

Supreme Court of North Dakota.

May 29, 1979.

Rehearing Denied June 28, 1979.

Chapman & Chapman, Bismarck, for
plaintiff and appellant, argued by Daniel J.
Chapman, Bismarck.

O'Grady & Morley, Grand Forks, and
Shaft, McConn, Fisher & Thune, Ltd.,

Grand Forks, for defendant and appellee, appearance by Lowell A. O'Grady, Grand Forks, argued by Gary R. Thune, Grand Forks.

ERICKSTAD, Chief Justice.

In this case, the plaintiff, Richard Rolland, a teacher formerly employed by the defendant, Grand Forks Public School District No. 1, appeals from a judgment that dismissed Rolland's complaint, which sought an injunction prohibiting the school district from hiring any other person to replace

him, or in the alternative, sought damages in the sum of $35,000. We affirm.

Near the end of his first year of employment with the school district as a librarian, Rolland received a letter from the school board informing him that the district contemplated not renewing his teaching contract for the coming year.[1]

On receipt of the letter informing him of the board's contemplated nonrenewal of his contract, Rolland requested that the board meet in executive session for the purpose of discussing and acting upon the contemplated nonrenewal of his contract.[2] Although

---

1. "April 1, 1976

   "Mr. Richard Rolland
   Red River High School
   Grand Forks, North Dakota

   "You are hereby advised that the School Board of Grand Forks Public School District # 1 is contemplating not renewing your teaching contract for the coming school year for the following reasons:

   1. Relational and control problems with students which reduce the effectiveness of the librarial service . . .
   2. Communication problems with library staff members which affect morale and compromise effective service . . .
   3. Failure to provide or sustain effective working relationships with some teachers which reduces the potential for librarial service . . .
   4. Instances of leaving the work station for long durations and otherwise interrupting usual service . . .

   "A special meeting for the purpose of considering and acting upon this contemplated action will be held on April 7, 1976, at 12:30 p. m., at the Conference Room of Central High School, at which time the board will discuss and give an explanation of the reasons for such contemplated action, and will produce witnesses and evidence in support of the contemplated nonrenewal. 'You will be given an opportunity to present witnesses and evidence to refute the contemplated nonrenewal, if you so desire.

   "You are also advised that the meeting will be closed to the public unless you request it be open and the board agrees to accede to your request. You are further advised that you have the right to have no more than two persons present at the meeting to represent and assist you and that if you so request, a continuance of the meeting will be granted for a period of time, not to exceed seven days.

   "If as the result of the meeting the board determines that your contract for the coming year will not be renewed, you will be so advised in writing of that fact by April 15, 1976.

   "Very truly yours,

   "Duane T. Taylor, Clerk
   Grand Forks School Board"

2. "15 47 38. *Legislative intent in employment of teachers—Notification of discharge or failure to renew—Hearing—*

   \* \* \* \* \* \*

   "5. *The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify such teacher in writing of such contemplated nonrenewal no later than April first. Such teacher shall be informed in writing of the time, which shall not be later than April seventh, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. Such teacher shall also be informed in writing of the reasons for such nonrenewal. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The school board shall give an explanation and shall discuss and confirm at such meeting its reasons for the contemplated nonrenewal of the contract. The meeting shall be an executive session of the board unless both the school board and the teacher shall agree that it shall be open to other persons or the public. The teacher may be represented at such meeting by any two representatives of his own choosing. In addition to board members, the school district clerk, and the superintendent, the school board may be represented by two other representatives of its own choosing at such executive session. Upon such hearing, if the teacher so requests, he shall be granted a continuance of not to exceed seven days. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any*

Rolland asked that he be permitted to have present with him at the meeting Mrs. Joanne McCaffrey, his wife, Mrs. Rolland, his attorney, Mr. Carlton G. Nelson, and his associate attorney, Dwight F. Kalash, the board permitted him to have present with him only two representatives and accordingly he elected to have present with him at the meeting Nelson and McCaffrey. The meeting commenced at 12:30 p. m. on April 7, 1976, and concluded shortly after midnight on April 8, 1976.

At the beginning of the meeting, the procedure to be followed at the meeting was agreed to. A written agreement had been prepared in advance as to procedure, and although it was not signed by the parties, the parties agreed to be bound by it.[3]

There are three significant facts to be noted before the specific issues on appeal are considered: (1) the letter informing Rolland of the board's contemplated nonrenewal of his contract informed him that the meeting would be closed to the public unless he requested that it be opened to the public and it further informed him that the board would "accede" to his request, (2) the transcript of the meeting discloses that the chairman of the board, Dr. Hamerlik, after announcing a quorum present, announced that Rolland had requested that the meeting be an executive session, and (3) after the issue of representation had been settled, the chairman announced the purpose of the meeting and guidelines.[4]

Although counsel for Rolland has enumerated many issues in his brief, we believe

executive session of the school board held for the purposes provided for in this section. The determination not to renew a contract if made in good faith shall be final and binding on all parties. Final notice of the determination not to renew a contract shall be given in writing by April fifteenth as provided in section 15–47 27." § 15–47.-38(5), N.D.C.C.

3. "For the purpose of the nonrenewal hearing scheduled for April 7, 1976, and at any continuance thereof, it is hereby stipulated by and between Carlton G. Nelson, attorney-representative for Mr. Rolland, and Gary R. Thune, attorney-representative for the school board of Grand Forks Public School District No. 1, that the aforementioned Board will be permitted to question all witnesses for the purpose of clarifying testimony; and it is further stipulated that the representatives of both parties shall also be allowed to question witnesses solely for the purpose of clarification; it being further agreed that both parties reserve the right to refuse to respond to questions which are argumentative in nature. Dated this seventh day of April, 1976."

4. The following are excerpts from the chairman's statement made at the beginning of the meeting:

"This meeting is held pursuant to the provisions of Section fifteen-forty-seven-thirty-eight of the North Dakota Century Code and it's for the purpose of discussing and acting upon the contemplated nonrenewal of Mr. Richard Rolland, one of the librarians at Red River High School.

\* \* \* \* \* \*

"The Board is required by statute to give serious consideration to the damage which can result to the professional stature and reputation of Mr. Rolland as a result of a decision to not renew his contract. As is

pointed out by the statute his stature and reputation were acquired only after expenditure of substantial time and money in obtaining the necessary qualifications for his profession and in years of practicing the profession.

"Finally, all actions of the Board must be taken with consideration and dignity giving the maximum consideration to basic fairness and decency. The reasons for nonrenewal of Mr. Rolland's contract as provided in the letter of contemplated nonrenewal dated April 1, 1976 which is Exhibit 1, a copy which has just been provided to each of you what must be sufficient to justify the contemplated action of this Board shall not be frivolous or arbitrary but shall be related to the ability, competence or qualifications of Mr. Rolland as a library teacher—teacher-librarian.

\* \* \* \* \* \*

"It is this Board's obligation to explain and discuss the reasons for this contemplated nonrenewal, to evaluate the testimony and evidence presented by the administration and the teacher and then to confirm or refuse to confirm the contemplated nonrenewal. The decision which the Board ultimately reaches must be made in good faith. The Board is requested to focus its attention throughout the hearing on the ability and competence of Mr. Rolland as a teacher-librarian.

"A greater significance should be placed upon testimony and evidence which is based upon firsthand knowledge, observation and information of witnesses, while testimony and evidence with a lesser foundation should be weighed accordingly.

"I will call for the opportunity of witnesses by both the Board and the teacher to make a statement, or respond to questions of their representative. Following the testimony of each witness it is proposed that the Board be

that the issues highlighted in counsel's oral argument are the crucial issues and we shall restrict ourselves to those issues in our discussion of this appeal. As counsel at the beginning of his oral argument conceded that the evidence was sufficient to justify a nonrenewal pursuant to Section 15 -47–38, N.D.C.C., if the law had otherwise been complied with, we shall not recite the evidence either in support of the nonrenewal or in opposition to it.

Suffice it is that counsel for Rolland concedes that Rolland's principal, assistant principal, immediate supervisor, the person with whom he shared the supervisory responsibilities in the library, and other teachers expressed the view that there was a lack of communication between him and the students, teaching staff members, and library staff members, an unwillingness to cooperate with library staff members, student dissatisfaction based upon a view of his unfairness and inconsistency, and, in contrast, other teachers in the school system who were not on the administrative level testified on Rolland's behalf to the effect that Rolland was doing a good job as librarian.

The first issue is whether or not the school board violated Section 15–47–38, N.D.C.C., in limiting Rolland's representation at the meeting to two people which had the effect of excluding from the meeting, his wife and one of his attorneys, Mr. Kalash.

As the board had informed Rolland in its letter of nonrenewal that it would accede to his wishes as to whether or not the meeting should be an executive session, and as Rolland requested an executive session, he cannot now complain that he was not permitted to have his wife and other counsel present at the meeting.

Section 15–47–38(5), N.D.C.C., limits the teacher's representation at such a meeting to two representatives of the teacher's choosing. It not only places a limit on the representatives a teacher may have present at the meeting, but it places a limitation on the number of representatives the board may have present at the meeting. Because of the importance of such a meeting to the family of the teacher, it would be appropriate for the Legislature to consider amending the law to permit the spouse of a teacher to attend such a session in addition to the two representatives now contemplated by the statute, but this is a policy matter, wholly within the function of the Legislature and thus not within the purview of our office.

Counsel for Rolland contends that Section 15–47–38, N.D.C.C., subsection (1), (particularly the language that asks the board in determining whether or not to renew a teacher's contract to take action with consideration and dignity, giving the maximum consideration to basic fairness and decency), requires the board to permit a person's spouse and an additional attorney to be present, notwithstanding the limitations provided in subsection (5) of Section 15–47–38, N.D.C.C.

Our view is that the specific language must prevail over the general language of the statute, and that therefore the limitations contained in subsection (5) control. *See* Section 1–02–07, N.D.C.C.[5] It should be noted that subsections (1), (2), (3), (4) and (5) of Section 15–47–38 were all included in Chapter 167 of the Session Laws of 1975, thus the old parts of the statute were reenacted and the amended parts became a part of the section at the same time.

The second issue is whether or not the duration of the meeting, almost 12

---

allowed to ask the witnesses questions for the purposes—purpose of clarification. Then it is proposed that the representative of the opposing party also be allowed to ask each witness solely for the purpose of clarification, while both parties reserving the right to refuse to respond to questions which are argumentative in nature."

**5.** "1 02 07. *Particular controls general.*—Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail." § 1–02–07, N.D.C.C.

hours, although interrupted for recesses including a break for the supper hour, offends that part of subsection (1) of Section 15–47–38, N.D.C.C., which requires that "all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency."

Counsel for Rolland contends that on two or three occasions, either Rolland or his attorney, Mr. Nelson, asked for relief. An examination of the record discloses and counsel for Rolland concedes that a demand for a continuance was never made and that Rolland did agree to proceed with the meeting until it was concluded, which resulted in a termination of the meeting at 12:23 a. m. the next day. Actually, it was perhaps a benefit to both the school board and Rolland that the meeting not be continued to another day because the witnesses were present for both sides and a continuance would have most likely required the witnesses to return on another occasion, thus increasing the inconvenience to them.

On one occasion, when a longer recess was to be taken so that the court reporter could rest, counsel for Rolland was asked if he would prefer an hour or an hour and a half recess, and to that counsel responded that an hour would be "just fine". The transcript discloses that at about two minutes before 11:00 p. m. there was a discussion following Rolland's request to sit down with his representatives to talk with them. The issue was over whether the board should recess and reconvene on that date or on a subsequent date. At that point, counsel for Rolland said:

"Excuse me, Mrs. McCaffrey advises me that if we could take a fifteen minute recess it's possible that that would solve the problem and we could finish tonight."

Thereafter, a fifteen minute recess was announced, but all persons returned to the room to reconvene two minutes before the recess expired. Following a return to the room, Mr. Nelson, on behalf of Rolland, made the following statement to which Rolland agreed:

**6.** Relying on *Dathe v. Wildrose School District No. 91*, 217 N.W.2d 781 (N.D.1974), counsel for the school board advised the board as follows:

"MR. NELSON: I want, because of the hour and so forth, and because of the tension at this hour, I want to say that as I understand Mr. Rolland at this point I think it would be prudent for him to also state in the record we desire to proceed and complete everything. Is that correct?

"MR. ROLLAND: Yes."

In light of the record, we cannot conclude other than that Mr. Rolland, with advice of counsel, agreed to proceed with the hearing without a continuance. Accordingly, we find no merit in the contention that the failure to continue the hearing to another day or that the duration of the meeting violated the provisions of Section 15–47–38, N.D.C.C., subsection (1).

The next issue is over the meaning of the word "confirm" as used in subsection (5) of Section 15–47–38, N.D.C.C. (fn. 2, *supra*).

■ Counsel for Rolland contends that the word confirm as used in the statute places upon the board a duty to substantiate the reasons for nonrenewal. Related to this issue is the issue of what is the burden of proof and upon whom does it lie? Our view is that it merely requires the board, after complying with the provisions of Section 15–47–38, subsections (1) and (5), to vote to nonrenew the contract for reasons stated in the notice of contemplated nonrenewal, thus in effect confirming the action by which it decided to send the notice of the contemplated nonrenewal of the contract.

Counsel for Rolland asserts that in light of the changes made in Section 15–47–38, N.D.C.C., by the 1975 session of the Legislature requiring the board, in addition to giving an explanation and discussing the reasons, to confirm its reasons for the contemplated nonrenewal of the contract, that the board has the burden of proof. Counsel sees this amendment as placing a responsibility on the board to establish some basis for its action.

Counsel further asserts that counsel for the school board inadvertently erroneously advised the board that neither side had any burden of proof.[6]

"If you are asking me about a burden of proof, Mr. Polovitz, is it that witnesses be produced to either confirm or refute the evi-

Counsel for Rolland asserts that the views expressed by this court in *Dathe*,[7] being prior to the amendments in 1975, do not state the law as it existed at the times pertinent to this lawsuit.

He further asserts that this court has taken a wholly different approach to nonrenewal meetings in *Baker v. Minot Public School District No. 1*, 253 N.W.2d 444 (N.D. 1977).

In *Baker* we said:

"When the Legislature amended § 15–47–38, N.D.C.C., it changed the 'pious hopes and exhortations' contained therein into a statutory mandate that a school board give serious consideration to damage that can result to the professional stature and reputation of a teacher as a consequence of a board's decision not to renew a teacher's contract. Further, the amended statute requires that the reasons for nonrenewal of a teacher's contract be sufficient to justify nonrenewal and shall not be frivolous or arbitrary, and shall be related to the ability, competence, or qualifications of a teacher in his capacity as a teacher." 253 N.W.2d at 450.

It is to be noted that counsel for Rolland apparently draws his conclusion that a burden of proof is placed upon the school board through that language, whereas counsel for the school board derives comfort from the next paragraph in *Baker* for his view that the reasons need not be proved by the school board but need only relate to the competence of the teacher so that the action that is taken is not arbitrary.

The paragraph upon which the school board relies, follows:

dence as to the reasons given? Now, those reasons must relate to ability, competence or qualifications. If the reasons do relate to that then there is an obligation to, by the evidence, to refute or confirm those reasons and I can't give you any clearer definition of your obligation than that.

"It is not a burden of proof according to the Supreme Court, so you cannot look to either side and say did they prove—at least the Board has no obligation to prove according to that case,"

"The findings of the district court are adequately supported by the record in the instant case. The transcript of the proceedings before the Board is void of any testimony or evidence to show that the Board had given serious consideration to the effect the nonrenewal of Mr. Baker's teaching contract would have upon his professional stature and reputation; it also appears from the transcript that one, if not two, of the Board members based their decision on the school administrator's recommendation, rather than upon the evidence before the Board, as is required by law; and, finally, it appears that the reaction of the Board to Mr. Baker's commission of a breach of the rules contained in the Teachers' Handbook (1975–1976) of the Minot High School as reported to the Board—when compared with his seven years of dedicated, enthusiastic, and cooperative teaching in the Minot public school system as the record discloses—is unduly harsh. We therefore affirm the findings of the district court that the Board acted unreasonably and arbitrarily and abused its discretion, and that the reasons given by the Board were not sufficient to justify the nonrenewal of Mr. Baker's teaching contract." 253 N.W.2d at 450.

Counsel for the school board points out that when Senate bill No. 2204 was introduced in the 1975 Legislative session, subsection (5) contained language which required that "the board must sustain the charges with evidence produced at such hearing" and that it further contained language which provided that witnesses should be subject to cross-examination by the teacher or his representative. Counsel fur-

7. "Nor do we hold that the board has a burden of proof or that charges must be filed. But we do hold that it has a burden to articulate a reason and to relate that reason to teaching competence or the needs of the district, as well as to comply with the other provisions of Subsection 2, requiring the board to offer to meet with the teacher, to hold the meeting if requested, and to withhold a final decision until after the meeting." *Dathe v. Wildrose School District No. 91, supra*, 217 N.W.2d at 786.

ther points out that the requirement that the board sustain the charges with evidence was deleted completely from subsection (5) and in lieu thereof, language was inserted requiring the board merely to explain and discuss its reasons and confirm them.[8]

■ It appears to us that in taking out of the proposed amendment the requirement that the board sustain the charges with evidence and in retaining in the proposed amendment the language requiring that the reasons be sufficient to justify the contemplated action that the Legislature intentionally avoided placing an evidentiary burden of proof upon the school board. Incidentally, the language permitting cross-examination was also deleted from the bill.

■ In light of this background, it does not appear that counsel for the school board misled the members of the board or the other board persons present at the meeting when he advised all parties as he did.

When we said in *Baker* that the pious hopes and exhortations of the Legislature had been changed into a statutory mandate, we were speaking of the amendment in Section 15–47–38, subsection (1). It previously read that it was the "intent" of the legislative assembly that "recognition be given by school boards to the damage that

can result to the professional stature and reputation of such teachers". The North Dakota Education Association, in drafting Senate Bill No. 2204, for introduction in the 1975 session of the Legislature, proposed the word "directive" for the word "intent". In amending the proposed bill, the Legislature rephrased the sentence to use neither of those words. The pertinent language, as finally adopted by the Legislature is that in this area the school boards "shall" give serious consideration to the damage that can result to the professional stature and reputation of such teachers.

From a study of the transcript of the meeting of the school board, which we shall later discuss in detail, it appears that serious consideration was given that matter.

The facts in *Baker* are clearly distinguishable from the facts in the instant case. In *Baker*, the teacher received praise from the principal, the assistant principal, and department chairman, whereas in the instant case the principal, associate principal, his immediate supervisor, and four other teachers testified negatively. In *Baker*, the reason for nonrenewal was that the teacher had on one occasion left his room unattended for 20 minutes to shovel snow from his driveway, whereas in the instant case four reasons, all relating to the teacher's ability

8. The pertinent part of subsection (5) of Section 15–47–38, N.D.C.C., as amended in 1975 by Chapter 167, Section 1, follows:

"Such teacher shall be informed in writing of the time, which shall not be later than April seventh, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. Such teacher shall also be informed in writing of the reasons for such nonrenewal. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The school board shall give an explanation and shall discuss and confirm at such meeting its reasons for the contemplated nonrenewal of the contract."

The pertinent part of subsection (5) of Section 15 47 38 as originally contained in Senate Bill No. 2204 follows:

"Such teacher shall also be informed in writing of his right to demand a specification of the reasons for such discharge or nonrenewal, which must on demand of the teacher be furnished not less than three days prior to any hearing to be held with regard to the contemplated discharge or nonrenewal. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary. At the meeting with the board if the teacher has informed the board in writing at least two days prior to such meeting that he will contest the charges brought against him, *the board must sustain the charges with evidence produced at such hearing. Witnesses shall be subject to cross examination by the teacher or his representative. The teacher may then produce such evidence as may be necessary to refute the charges. Witnesses shall be subject to cross examination.*" [Emphasis added.]

and competence, were given, and only one related to leaving his work station, and that was apparently on more than one occasion.

As counsel has conceded in the beginning that the evidence supports the board's decision, we shall not further attempt to describe it.

Although counsel for Rolland has asked us to indicate the meaning of the next to the last sentence of subsection (5) of Section 15–47–38, N.D.C.C., which reads: "The determination not to renew a contract if made in good faith shall be final and binding on all parties", we find it inappropriate to do so in this case.

Counsel asserts that the board's view is that failure to comply with other provisions of Section 15–47–38 is immaterial as long as the board acts in good faith. He takes issue with this view and asks us to determine its true meaning. As neither the trial court nor we have found a violation of any of the parts of Section 15–47–38, N.D.C.C., we deem it inappropriate to attempt to ascertain what the significance of that sentence might be if other provisions of the section were not complied with. We hope that by the time such an issue is ripe for decision, the Legislature will have clarified its meaning.

■ Lastly, the final issue is over whether or not the record discloses that the board gave serious consideration to the damage that could result to the professional stature and reputation of Rolland in conjunction with its decision not to renew his contract.[9]

A review of the transcript of the meeting discloses not only that the chairman of the school board made reference to the need to consider this matter at the beginning of the meeting (fn. 4, *supra*), but also that this matter was referred to later in the meeting and particularly near the end of the meeting following a motion by a board member that Mr. Rolland's contract not be renewed.[10]

In light of the record, it is obvious that all members of the board were made aware of their duty to give serious consideration to damage that could result to the professional stature and reputation of Mr. Rolland by a decision on their part not to renew his contract.

Accordingly, we affirm the judgment of the trial court.

SAND, PAULSON and PEDERSON, JJ., and HEEN, District Judge,* concur.

9. "1. . . . In the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the contracts of teachers, school boards shall give serious consideration to the damage than can result to the professional stature and reputation of such teachers, . . ." § 15–47–38(1), N.D.C.C.

10. "MR. POLOVITZ: I just want the Board to realize what they're doing, and I don't think the Board realizes what they're doing. What I'm trying to do is make it very apparent.
"DR. HAMERLIK: If you're speaking to whether or not it should be renewed or not to renew then it's in order. Go ahead.
"MR. POLOVITZ: I'll stop there.

"You are literally destroying a person on evidence that in many cases I think is very, very trite. If that goes on the record it doesn't bother me in the least.
"I think what you have here is a situation that is not based on the competency of a teacher but on a bunch of trite comments that are going to destroy him if you vote as you do. I'm through.
"MRS. NORBY: Mike, I don't think there's anyone in this room who doesn't appreciate or understand what we're doing. I don't think any of us find it easy at all and I think we have to each judge in our own mind what constitutes competency at this point."

* The Honorable Douglas B. Heen, D. J., sitting in place of the Honorable Gerald W. Vande Walle, J., disqualified.