**Sam DOBERVICH, Plaintiff and Appellant,**

v.

**CENTRAL CASS PUBLIC SCHOOL DISTRICT NO. 17, a Public Corporation, Defendant and Appellee.**

Civ. No. 9610–A.

Supreme Court of North Dakota.

Feb. 24, 1981.

the board was contemplating not renewing his contract for the school year 1977–1978. The letter informed Dobervich of the reasons for the contemplated nonrenewal as well as informed him that a meeting of the board would be held on March 30, 1977, "at which time the board will discuss and give an explanation of the reasons for such contemplated action, and will produce witnesses and evidence in support of the contemplated nonrenewal. You will be given an opportunity to present witnesses and evidence to refute the contemplated nonrenewal, if you so desire."

Following the March 30 hearing, the board, on March 31, 1977, notified Dobervich by letter that the board had decided to not renew his teaching contract for the 1977–1978 school year.[1] Subsequent to the notification that his contract would not be renewed, Dobervich served the school district with a summons and complaint, alleging that the reasons stated for the nonrenewal were not sufficient to justify the contemplated action of the school board, were frivolous and arbitrary, did not relate to the ability, competence, or qualifications of Dobervich as a teacher, and, if it should be found that the board's reasons for nonrenewal were sufficient under the provisions of Section 15-47-38, N.D.C.C., the reasons were not confirmed at the hearing before the school board as required by Section 15-47-38, N.D.C.C. Dobervich asked that the school district be enjoined from attempting to fill his position, that a mandatory injunction be issued requiring the school district to issue Dobervich a contract for the 1977–1978 school year or, in the alternative, that Dobervich be awarded damages in the sum of $20,000. Dobervich demanded and received a jury trial and, following the trial, the jury awarded Dobervich $10,000 in damages. The school district appealed the judgment entered on the verdict of the jury to this court. On appeal we determined that Dobervich was not entitled to a jury trial as a matter of right, but rather it was for the trial court to review

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for plaintiff and appellant.

John D. Kelly and Jane C. Heinley, of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and appellee, argued by Jane C. Heinley, Fargo.

VANDE WALLE, Justice.

Sam Dobervich appeals from a judgment entered by the district court of Cass County in favor of the Central Cass Public School District No. 17. We affirm.

Dobervich was employed by the school district for a period of several years, including the school year 1976–1977. On March 21, 1977, a letter was addressed to Dobervich, at the direction of the school board [hereinafter "board"], informing him that

---

1. The letters and meeting were in accordance with Section 15–47–38, N.D.C.C., and the procedures followed in notifying Dobervich are not at issue in this matter.

the nonrenewal decision to determine if the procedural steps required by the statute have been followed and if, under the facts of the case, a nonrenewal was authorized. The case was remanded for preparation of findings of fact and conclusions of law by the trial court. *Dobervich v. Cent. Cass Pub. Sch. Dist. No. 17*, 283 N.W.2d 187 (1979).

Following a hearing before the district court, in which the transcript of the testimony and the exhibits submitted at the jury trial were stipulated by the parties into evidence and after argument to the district court by counsel for the parties, the court prepared findings of fact and conclusions of law in which it concluded that all the procedural steps required by Section 15–47–38, N.D.C.C., were met and that under the facts a nonrenewal was authorized.

I

On appeal Dobervich has set forth issues which we will consider separately. The first issue, as stated by Dobervich, is:

"When the Supreme Court in the prior decision in this case called the Trial Court's attention to the fact that it must determine if the Board had followed procedural steps required by the statute and whether, under the facts of this case, a nonrenewal was authorized, did it intend to convey the meaning that the only concern for the Trial Court was whether the Board had met the notice requirements of the statute and provided a hearing as required by statute?"

Although Dobervich has delineated this as an issue, we cannot conclude that our previous opinion restricted the trial court to procedural matters nor do we believe the trial court so construed our opinion. Thus in the previous *Dobervich* decision we stated:

"Dobervich was not, as a matter of right, entitled to a jury trial. The court will review the nonrenewal decision by the Board to determine whether the procedural steps required by the statute

have been followed *and whether, under the facts of the case, a nonrenewal is authorized*." [Emphasis supplied.] 283 N.W.2d at 193.

In its conclusions of law the trial court stated:

"The role of this trial Court on remand of this case is to review the nonrenewal decision of the school board to determine whether the procedural steps required by the statute have been followed *and under the facts in the case, a nonrenewal is authorized. If one or more of these two elements are lacking*, then the Court would be able to give injunctive relief or mandamus relief. Because of lapse of time it would be impossible to render equitable relief and so damages as an alternative would be substituted therefor." [Emphasis supplied.]

It is apparent from the language in our previous *Dobervich* decision that the trial court is not limited to determining whether or not the notice requirements of the statute have been met and a hearing provided to the teacher. It is equally apparent that the trial court did not so construe our opinion.

II

The second issue, as framed by Dobervich, is:

"Has the Supreme Court by its decisions in *Rolland* and *Dobervich* repudiated the rationale set forth in *Baker v. Minot School District*?"

*Baker v. Minot Public School District No. 1*, 253 N.W.2d 444 (N.D.1977), involved an action brought by a teacher claiming improper nonrenewal of the teacher's contract. The district court found that the board had failed to give maximum consideration to basic fairness and decency and that the board had not acted in good faith. The district court determined that the school district had failed to comply with the law regarding nonrenewal of a teacher's contract[2] in that the board acted unreasonably

2. Subsection 1 of Section 15–47–38, N.D.C.C., reads:

"1. The legislative assembly, in recognition of the value of good employer-employee rela-

and arbitrarily and abused its discretion because the reasons given by the board for nonrenewal were not sufficient to justify the nonrenewal of the teacher's contract. On appeal this court held:

"Where it appears from the record that a school board has failed to give serious consideration to the effect nonrenewal of a teacher's contract will have on his professional stature and reputation; that one, if not two, of a school board's five members based their decision on a school administrator's recommendations, rather than upon the evidence before the school board, as required by law; and that the reaction of a school board to a teacher's breach of two rules contained in a teachers' handbook, when compared to his overall favorable performance as a teacher, is unduly harsh—a school board has failed to comply with the substantive requirements set forth in § 15–47–38, N.D. C.C." Syllabus by the Court ¶ 2, 253 N.W.2d at 445.

In *Baker*, the teacher left his class 20 minutes early, in violation of the school policy, on one occasion, to return home to shovel snow off his sidewalk.

*Rolland v. Grand Forks Public School Dist. No. 1*, 279 N.W.2d 889 (N.D.1979), involved another nonrenewal of a teacher's contract in which one of the issues concerned advice given by the attorney for the school board that neither party, under Section 15–47–38, N.D.C.C., had the burden of proof at the hearing on the contemplated nonrenewal. In determining that the ad-

tionships between school boards of this state and the teachers employed in the school systems, the need to recruit and retain qualified teachers in this state, and further in recognition of the many intangibles in evaluating the performance of individual members of the teaching profession, urges that each school board of this state ensure through formally adopted policies, that channels of communication exist between the board, supervisory personnel, and teachers employed within its school system. In the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the contracts of teachers, school boards shall give serious consideration to the damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired only after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession and in years of practicing the profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency."

Subsection 5 of Section 14–47–38 provides: "5. The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify such teacher in writing of such contemplated nonrenewal no later than April first. Such teacher shall be informed in writing of the time, which shall not be later than April seventh, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. Such teacher shall also be informed in writing of the reasons for such nonrenewal. Such reasons shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The school board shall give an explanation and shall discuss and confirm at such meeting its reasons for the contemplated nonrenewal of the contract. The meeting shall be an executive session of the board unless both the school board and the teacher shall agree that it shall be open to other persons or the public. The teacher may be represented at such meeting by any two representatives of his own choosing. In addition to board members, the school district clerk, and the superintendent, the school board may be represented by two other representatives of its own choosing at such executive session. Upon such hearing, if the teacher so requests, he shall be granted a continuance of not to exceed seven days. No cause of action for libel or slander shall lie for any statement expressed either orally or in writing at any executive session of the school board held for the purposes provided for in this section. The determination not to renew a contract if made in good faith shall be final and binding on all parties. Final notice of the determination not to renew a contract shall be given in writing by April fifteenth as provided in section 15–47–27."

vice of the attorney did not mislead the school board members, this court stated:

"Counsel for Rolland contends that the word confirm as used in the statute places upon the board a duty to substantiate the reasons for nonrenewal. Related to this issue is the issue of what is the burden of proof and upon whom does it lie? Our view is that it merely requires the board, after complying with the provisions of Section 15–47–38, subsections (1) and (5), to vote to nonrenew the contract for reasons stated in the notice of contemplated nonrenewal, thus in effect confirming the action by which it decided to send the notice of the contemplated nonrenewal of the contract." 279 N.W.2d at 893.

In discussing the opinion of this court in *Baker*, the court in *Rolland* observed:

"When we said in *Baker* that the pious hopes and exhortations of the Legislature had been changed into a statutory mandate, we were speaking of the amendment in Section 15–47–38, subsection (1). It previously read that it was the 'intent' of the legislative assembly that 'recognition be given by school boards to the damage that can result to the professional stature and reputation of such teachers'. The North Dakota Education Association, in drafting Senate Bill No. 2204, for introduction in the 1975 session of the Legislature, proposed the word 'directive' for the word 'intent'. In amending the proposed bill, the Legislature rephrased the sentence to use neither of those words. The pertinent language, as finally adopted by the Legislature is that in this area the school boards 'shall' give serious consideration to the damage that can result to the professional stature and reputation of such teachers." 279 N.W.2d at 895.

In *Dobervich, supra,* the trial court had determined that under the *Baker* decision

Dobervich was entitled to a jury trial, although there was no jury trial in *Baker*. Dobervich's argument on this appeal is that because in *Baker* this court approved the trial court's reviewing of the action of the board to determine if that action conformed to the procedural and substantive requirements set forth in Section 15–47–38, and the trial court's finding that the board's reasons for nonrenewal were insufficient to justify the action of the board in not renewing the teacher's contract, subsequent opinions in *Rolland* and *Dobervich* must be read in view of that decision.[3]

▮ Whatever Dobervich's reading of *Baker* may entail, we believe the opinions of this court in *Rolland* and *Dobervich* are clear. *Rolland* concluded that the Legislature intentionally avoided placing an evidentiary burden of proof on the board. In *Dobervich* we concluded that neither a jury nor the trial court could substitute its judgment for that of the board but that it was the duty of the trial court to determine if the reasons given by the board for nonrenewal were sufficient to justify its action. Thus we construe the statutory provision in Section 15–47–38(5) requiring the board to "give an explanation and . . . discuss and confirm . . . its reasons for the contemplated nonrenewal of the contract" to mean that the board, after having given the teacher written notice of its reasons for contemplated nonrenewal, may not, at the hearing with the teacher, articulate new or additional reasons for its action nor may the board, in determining to not renew a teacher's contract, rely upon reasons not contained in the notice to the teacher and explained at the hearing. Further, Section 15–47–38(5) permits the teacher, at the hearing, to produce such evidence as may be necessary to evaluate the reasons for nonrenewal. The teacher and the board may produce witnesses to confirm or refute those reasons.[4]

---

**3.** Dobervich insists that he does not contend that the trial court should substitute its judgment for that of the board but he also argues that consistent with the statutes and with *Bak-*

er the trial court should "make its own decision under the facts in this case."

**4.** Although we do not intend by this opinion to formalize the procedure by which a hearing

■ Finally, we conclude that in reviewing the nonrenewal decision to determine if, under the facts of the case, a nonrenewal is authorized, the trial court, under the language of the statute, is to determine if the reasons are "sufficient to justify the contemplated action of the board" and if the reasons are "frivolous or arbitrary" or are not "related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff." In so doing, the trial court must review the reasons from the standpoint of legal sufficiency to meet the standards prescribed by the statute under the facts of the case. Where there is a dispute as to the competence of the teacher, the task will be exceedingly more difficult than it was in *Baker*, where the facts were not in dispute but rather the only question was whether or not the fact that the teacher left a class unattended for 20 minutes on one occasion was legally sufficient to sustain the action of the board in not renewing the teacher's contract. Where there is a dispute as to the competence of the teacher, the trial court's task is more difficult because no burden of proof is placed on the board. *Rolland, supra.*[5] Dobervich refers us to cases involving appeals from decisions of administrative agencies such as *Allstate Ins. Co. v. Knutson*, 278 N.W.2d 383 (N.D.1979), and *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979), as support for his position that courts do impose their judgment in these types of cases. He notes that these cases were cited by this court in *Dobervich, supra.* While these cases involving administrative agencies

were cited in *Dobervich*, they were cited for the principle that under the doctrine of separation of powers in Section 94 of the North Dakota Constitution, a court must exercise restraint in reviewing nonjudicial functions and should not substitute its judgment for that of the board. The decisions, as applied in those cases involving appeals from administrative agencies, have even more impact in deterring a court from interfering with a board's decision to not renew a teacher's contract when we consider this matter: (1) does not involve an appeal from the decision of the board as a matter of statutory right, as does an appeal from a decision of an administrative agency [§ 28-32-01, N.D.C.C.], and (2) does not involve a standard of proof upon which the sufficiency of the evidence to sustain the findings is to be measured, as does an appeal from a decision of an administrative agency [§ 28-32-19, N.D.C.C.]. Because there is no statute providing for an appeal from a decision of the board to not renew a teacher's contract[6] nor any statutory standard by which the evidence submitted at the nonrenewal hearing is to be measured, and because the trial court may not substitute its judgment for that of the board, we conclude that, except for procedural matters, the trial court's review of the reasons given for nonrenewal of the teacher's contract and the evidence submitted at the hearing pertaining thereto is limited to: (1) determining whether or not the reasons given are in accordance with the statutory provisions, i. e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of

required under Section 15-47-38(5) is conducted, the wording of the statute might well indicate the Legislature envisioned a hearing at which the teacher would present evidence to refute the reasons given by the board in its notice of contemplated nonrenewal and only if the board determined it necessary to counter that evidence would it produce evidence of its own to confirm the reasons it had given in the notice of nonrenewal.

In *Selland v. Fargo Pub. Sch. Dist. No. 1*, 285 N.W.2d 567 (N.D.1979), this court concluded that the failure of a board to afford any hearing was a denial of the teacher's rights. That deci-

sion is, of course, consistent with our holdings in the other cases cited herein because the teacher would not have the opportunity to refute the reasons given by the board for its nonrenewal of the teacher's contract.

5. In *Rolland v. Grand Forks Public School Dist. No. 1*, 279 N.W.2d 889 (N.D.1979), counsel conceded that the evidence supported the board's decision to not renew the teacher's contract.

6. See concurring opinion in *Samuels v. White Shield Public Sch. Dist.*, 297 N.W.2d 421, 425 (N.D.1980).

the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board has abused its discretion in reaching the nonrenewal decision.[7] Such a review will, in our estimation, permit the teacher his day in court and, at the same time, will not unduly involve the courts in the administration of the school system.[8]

In arriving at abuse of discretion as the proper standard of review to be applied by the trial court in these matters, we are aware of the language of this court in *Baker, supra,* wherein the court stated that a school board's decision to renew or not to renew a teacher's contract "is no longer purely a discretionary act, but, rather is an act subject to the procedural and substantive requirements set forth in § 15–47–38, N.D.C.C." 253 N.W.2d at 451. However, the argument put forth by the school board in that instance was that the exercise of discretion is not subject to review by the courts "except in a case of clear or gross abuse of discretion, clear violation of law, fraud, bad faith, or the transcending of the Board's legal authority." 253 N.W.2d at 450. As we have noted in footnote No. 7, we recognize that a school board abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. In *Baker,* the trial court determined in both its findings and conclusions of law that the board "acted unreasonably, arbitrarily, and abused its discretion, ..." 253 N.W.2d at 447–448. It is apparent, therefore, that in *Baker* the school board, on appeal, urged a

standard of abuse of discretion which allowed the school board almost unlimited latitude in arriving at its decision to not renew the teacher's contract. It was this standard which this court in *Baker* rejected. The standard adopted by us now and used by the trial court in *Baker* does not allow such unlimited latitude to the board in determining to not renew a teacher's contract.

### III

Dobervich has argued that the reasons given by the board were not sufficient to justify the contemplated nonrenewal and were "frivolous or arbitrary" within the meaning of Section 15–47–38. Those reasons were set forth in the board's notice to Dobervich as follows:

"1. Poor motivation of the low academic achiever

"2. Substandard student project work

"3. Student attitude shows reluctance rather than cooperation in the learning process"

Such reasons cannot be considered as "frivolous or arbitrary" within the meaning of Section 15–47–38. In some instances they go to the heart of a teacher's competency in performing his teaching duties. Dobervich was employed as a distributive education, accounting, and general business teacher at Central Cass High School. The board introduced evidence through the principal of the school as to its reasons for nonrenewal. That evidence included such matters as Dobervich's inability to adequately motivate students and his inability to make the school store an aggressive part

7. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. See *In Interest of F. H.,* 283 N.W.2d 202 (N.D.1979); *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208 (N.D.1979). We believe that definition would be properly applied to an abuse of discretion by a school board in determining to not renew a teacher's contract.

8. The statutory scheme provided by the Legislature for nonrenewal of a teacher's contract obviously envisions that a board has some reasons for nonrenewal of the teacher's contract. Before the board can make its final determination, however, it must give the teacher written

notice and the notice must include the reasons for the contemplated action of the board. The teacher has the opportunity at that hearing to refute those reasons. If we have incorrectly apprehended the intent of the Legislature or if the Legislature determines that the procedure involving review of a school board's decision to not renew a teacher's contract should be expanded, the Legislature, and not the courts, is the proper arena in which to resolve the matter. The majority opinion, the concurring opinion, and the dissenting opinion in *Samuels v. White Shield Public Sch. Dist.,* 297 N.W.2d 421 (N.D.1980), all confirm that point.

of the Distributive Education curriculum; refusal of students to work; and the condition of the store. Dobervich maintained that his early evaluations by the principal showed satisfactory supervision and organization of the store, and that the inventory of the store was kept down at the principal's suggestion; that in in-State competition the prior week one of his students was a first-place winner, one took third in another category, two students were finalists, and two other students were among the top six students. Dobervich alleged that the students who refused to do anything in bookkeeping class did so because of dissatisfaction with their class schedule as set up by the principal. He alleged that lack of motivation had developed in students at an early age with prior teachers and that he should not be blamed for something that had been a pattern for a long period of time.

We have reviewed the testimony adduced at the jury trial, which included a transcript of the nonrenewal hearing. The transcript does not indicate that the evidence supporting the reasons for not renewing Dobervich's contract was clear and convincing, but that is not the test. If we were to use our own judgment we might very well have voted to renew Dobervich's contract. But, as we have heretofore noted, it is not for the courts to substitute their judgment for that of the board. We conclude that the reasons given by the board for not renewing Dobervich's contract are adequate within the statute and that the evidence presented at the hearing does not convince us that the board abused its discretion in voting to not renew Dobervich's contract.

## IV

Dobervich also alleges that the board did not meet the test of "maximum considera-tion to basic fairness and decency" as set forth in Section 15–47–38(1), i. e., that portion of the statute which reads:

" . . . In the very sensitive area of discharge of teachers for cause prior to the expiration of the term of the teachers' contracts, or in decisions not to renew the contracts of teachers, school boards shall give serious consideration to the damage that can result to the professional stature and reputation of such teachers, which stature and reputation were acquired only after the expenditure of substantial time and money in obtaining the necessary qualifications for such profession of teaching; and that in all decisions of school boards relating to discharge or refusal to renew contracts, all actions of the board be taken with consideration and dignity, giving the maximum consideration to basic fairness and decency." [9]

The trial court made the following finding concerning this matter:

"d.) . . . While this matter was not affirmatively discussed or mentioned at the board meeting, the Court finds no evidence that the board did not take such into consideration. During the trial of the case, each member testifying stated that consideration of this element was given. A statement to such effect at the hearing for the sole purpose of meeting this requirement would seem to this Court to be innocuous."

We agree with the trial court that a mere statement on the record that the board considered this matter is neither decisive nor indicative of whether or not the board took this matter into consideration in its determination to not renew the teacher's contract. A discussion of the effects on the teacher, such as occurred at the hearing in Rolland, supra,[10] is of more significance be-

9. In Baker v. Minot Public School District No. 1, 253 N.W.2d 444 (N.D.1977), this court concluded that a comparison of the former provisions of this section with its provisions as amended in 1975 indicated that the Legislature "changed the precatory nature of the admonition that the school boards consider the profes-sional stature and reputation of teachers into a mandatory requirement." 253 N.W.2d at 449.

10. In Rolland v. Grand Forks Public School Dist. No. 1, supra (fn. 5), the transcript of the nonrenewal hearing disclosed that discussion of this particular matter did occur and this court concluded it was obvious that all mem-

cause it indicates the board was required to face the consequences of its actions. Nevertheless, we conclude that whether or not the board has met this obligation of the statute is to be determined from the entire record. The transcript of the jury trial was, by stipulation, part of the record before the trial court in the hearing following the remand by this court. Although the trial court at the time of the jury trial was not the trier of fact, the court nevertheless had the opportunity to hear the examination of witnesses and observe their demeanor. The jury trial transcript was some 591 pages long and the trial took from September 11 to September 15, 1978. Many questions were asked of the school board members testifying, in addition to the direct question of whether or not they gave serious consideration to the damage that can result to the professional stature and reputation of the teacher, which would assist the trial court in determining if the board had, in fact, done so. We believe the record adequately sustains the trial court's conclusion that all the requirements of Section 15–47–38 were met by the board.

 Dobervich objects to the fact that evaluations of prior years were relied upon by the board in making its decision, although no notice was given to him that such evaluations would be relied upon nor were they discussed at the nonrenewal hearing. At trial, the board members testified they relied, in part, upon those evaluations. An examination of the transcript of the nonrenewal hearing discloses that the evaluations were mentioned by some board members as well as by Dobervich himself. Dobervich stressed the positive aspects of those evaluations. There were some negative statements in the evaluations also. Dobervich was not denied his statutory rights by the board's consideration of these evaluations.

■ Finally, Dobervich contends that the motion to not renew did not state the reasons, and therefore the board did not confirm the reasons for nonrenewal within the meaning of that term as prescribed in *Rolland, supra,* which held that to confirm means to not renew for the reasons stated in the letter of contemplated nonrenewal. The trial court, after considering all the evidence, found that the board "afforded Dobervich all of the rights to which he was entitled under the statutes." An examination of the testimony of the board members at the jury trial reflects that the reasons for nonrenewal were those given in the letter. Dobervich's contention that the reasons for nonrenewal of the contract are inadequate, with which we disagree, is a different issue which has been disposed of earlier in this opinion.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

bers of the board were made aware of their duty to give serious consideration to damage that could result to the professional stature and reputation of the teacher by a decision on the part of the board to not renew his contract.