Lucille FERCHO, Plaintiff and Appellee,

v.

MONTPELIER PUBLIC SCHOOL DISTRICT NO. 14, a public corporation, Defendant and Appellant.

Civ. No. 9995.

Supreme Court of North Dakota.

Nov. 12, 1981.

Chapman & Chapman, Bismarck, for plaintiff and appellee; argued by Charles L. Chapman, Bismarck.

Pope & Stites, Jamestown, for defendant and appellant; argued by Georgia M. Pope, Jamestown.

ERICKSTAD, Chief Justice.

Montpelier Public School District No. 14 appeals from a judgment entered by the District Court of Stutsman County in favor of Lucille Fercho. The trial court's judgment reversed a decision by the Montpelier School Board (board) to nonrenew Fercho's teaching contract. We reverse the judgment of the trial court and thereby reinstate the decision of the board.

At the time of the trial court's review in December, 1980, Fercho had been employed approximately nine years as an English teacher with the Montpelier School District.

In the spring of 1980, the Montpelier School District was financially distressed because of a serious decline in enrollment. As a result, the board issued four notices of contemplated nonrenewal to teachers in the Montpelier School District. Fercho was one of the four teachers.

Fercho was notified of the nonrenewal proceedings by letter dated March 13, 1980. Hearings were held on March 19, 1980, and April 1, 1980, to explain, discuss and confirm the reasons for the nonrenewal of Fercho's contract. Following the nonrenewal hearings, the board voted to nonrenew the teaching contract of Mrs. Fercho. The contracts of the other three teachers who received letters of contemplated nonrenewal were also nonrenewed.

Following the nonrenewal of the four teaching contracts, the board reviewed the English, music, and library curriculums in an effort to combine teaching responsibilities. The superintendent presented two plans to the board for their consideration. Plan A provided for two full-time positions, one of which was a full-time English-library position for which Fercho was qualified. Plan A would have eliminated the equivalent of 1.5 positions. Plan B eliminated the equivalent of 1.75 positions. It created a part-time, rather than full-time, English-library position for which Fercho was qualified. The superintendent recommended Plan B over Plan A. He testified at trial that the recommendation was made because Plan B was more economical and, further, it made it easier for the school to hire a music

teacher because under Plan B music was combined with English into a full-time position. It was his opinion that the board would have a difficult time finding a part-time music teacher.

The board adopted Plan B and advertised to fill the part-time English-library position. The part-time librarian, Mrs. Limvere, whose contract was one of the four that was previously nonrenewed, was ultimately hired to fill the new, part-time position. Fercho did not submit an application for that part-time position. She did, however, make several demands on the board for a full-time position.

Following her nonrenewal, and the board's rehiring of Mrs. Limvere to fill the part-time English-library position, Fercho commenced an action in the District Court of Stutsman County. The district court entered a judgment in Fercho's favor stating as follows:

"IX.

"The Defendant school district failed to give serious and adequate consideration to the damage resulting to this Plaintiff and failed to entertain and complete the non-renewal proceedings relating to Plaintiff with consideration and dignity and failed to give maximum consideration to basic fairness and decency relating to the Plaintiff's teaching position and career.

"X.

"The Defendant school district acted arbitrarily and in bad faith to terminate the teaching position of the Plaintiff.

"XI.

"Defendant school district failed to give full consideration and regard to the statutory rights of the Plaintiff and to the spirit of Section 15–47–38, North Dakota Century Code.

"XII.

"At the time of the non-renewal, the school district had a reduction in force policy which gave precedence to seniority. The seniority of the Plaintiff, however, was not recognized by the Defendant school district in the process of reorganizing teacher staff."

The trial court awarded Fercho damages in the amount of $13,074.

On appeal to this court, the Montpelier School District asserts that the trial court improperly substituted its judgment for that of the school board.

Fercho admits that the school board followed the procedural requirements of Section 15–47–38, N.D.C.C., regarding written notice of contemplated nonrenewal. She admits that the school district was suffering financial difficulties. Further, Fercho does not dispute that reduction in staff for financial reasons is a proper reason for nonrenewal. Fercho does argue, however, that the board members had additional, unstated motives for nonrenewing her contract.

Section 15–47–38, N.D.C.C., provides that the reasons for nonrenewal shall not be "frivolous or arbitrary." Fercho contends that the board's reasons were "frivolous or arbitrary" for the following reasons:

1. The board did not give proper consideration to Fercho's seniority;

2. In restructuring its curriculum, the board should have adopted Plan A which would have made a full time English-library position available; and

3. The board should have considered teaching responsibility changes prior to the nonrenewal process, so that the non-renewed teacher could have had input into the decisions.

Additionally, Fercho asserts that she had protection from the "reduction in force" policy adopted by the board at its December 12, 1977, meeting. That policy provided a sequential policy for staff reduction as follows:

"When teachers are judged to be similarly qualified and significant differences in length of full-time district service ex-

ist, preference in retention will be given to teachers with the longest district service. Recommendations for termination under this policy will be made by the Principal involved and the Superintendent of schools for action by the School Board. A conference prior to the School Board action will be held between the teacher and the administration. Notification of contemplated non-renewal will follow section 15–47–38 of the North Dakota Century Code.

"Staff members, who have lost their positions because of this policy, may request and be given consideration for reemployment if a vacancy for which they are qualified should occur."

Fercho asserts that if this policy had been followed, she would have retained her position with the Montpelier School District.

■■ We hold that the trial court erred in concluding that the school district failed to give "serious and adequate consideration to the damage" resulting to Fercho and that the board "acted arbitrarily." In analyzing findings of fact and conclusions of law to determine our standard of review, we look to their substance rather than the label given them by the trial court. *Hamilton v. Winter*, 281 N.W.2d 54, 58 (N.D.1979). Although the trial court termed these conclusions findings of fact, they are in substance conclusions of law and, therefore, fully reviewable by this court. *Hager v. Devils Lake Public School District*, 301 N.W.2d 630, 633 (N.D.1981).

In *Rolland v. Grand Forks Public School District No. 1*, 279 N.W.2d 889, 893 (N.D. 1979), we stated that Section 15–47–38, subsections (1) and (5), N.D.C.C., merely requires the board to "vote to nonrenew the contract for reasons stated in the notice of contemplated nonrenewal, thus in effect confirming the action by which it decided to send the notice of the contemplated nonrenewal of the contract."

In this case, Fercho does not dispute that the reasons stated in her letter of contemplated nonrenewal were proper reasons for nonrenewal. Further, she does not dispute that the board "confirmed" those reasons

by voting to nonrenew at her hearing. Therefore, the procedural requirements of Section 15–47–38, N.D.C.C., as interpreted in *Rolland* were met.

The Montpelier School District asserts that the trial court improperly substituted its judgment for that of the school board. In *Dobervich v. Central Cass Public School District*, 302 N.W.2d 745, 751–52 (N.D.1981), we stated that the trial court may not substitute its judgment for that of the board, concluding:

"[E]xcept for procedural matters, the trial court's review of the reasons given for nonrenewal of the teacher's contract and the evidence submitted at the hearing pertaining thereto is limited to: (1) determining whether or not the reasons given are in accordance with the statutory provisions, *i. e.*, they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board has abused its discretion in reaching the nonrenewal decision. Such a review will, in our estimation, permit the teacher his day in court and, at the same time, will not unduly involve the courts in the administration of the school system." [Footnotes omitted.]

The issue in this appeal, therefore, is whether or not the board abused its discretion in nonrenewing Fercho's contract. We stated in *Dobervich* that a school board abuses its discretion only when it "acts in an arbitrary, unreasonable, or unconscionable manner." *Id.* at 752, footnote 7.

The facts of this case do not show that the board acted in an arbitrary, unreasonable, or unconscionable manner. The board stated in its letter of contemplated nonrenewal that it contemplated nonrenewing Fercho's teaching contract because of the financial need to reduce staff. There is no dispute that the Montpelier School District lacked funds and needed to reduce its teaching staff.

To deal with the financial difficulties, the school board nonrenewed the following persons contracts: Mr. Broadwell, principal and social studies; Mr. Potocki, music; Mrs. Limvere, part-time librarian and elementary reading; and Mrs. Fercho, English. After nonrenewing the four contracts, the board combined teaching responsibilities to reduce the financial cost to the school district. By combining responsibilities, the school board eliminated the equivalent of 1.75 positions. The principal's position was reassigned to another faculty member and his social studies duties were distributed to another social studies teacher on the staff. As previously discussed, the board ultimately adopted Plan B which combined English and music into a full-time position and made a part-time English-library position. The board then advertised for a part-time English-library, and a full-time English-music position and a basic skills position. Fercho admitted that she saw the Montpelier advertisements, two of three for which she was qualified, but she applied for neither. Although she demanded a full-time position several times during the nonrenewal process, she did not apply for the part-time position which the Montpelier School District had available.

Although it may have been good management for the board to consider which responsibilities should be combined before nonrenewing the four contracts rather than after the nonrenewal, we do not believe that its failure to do so can be considered "arbitrary, unreasonable or unconscionable." Nor, do we consider the board's failure to ask Fercho if she were interested in a part-time position, in light of her repeated requests that her full-time position be continued, to be "arbitrary, unreasonable, or unconscionable."

Fercho cites *Baker v. Minot Public School District No. 1*, 253 N.W.2d 444 (N.D.1977), for the proposition that a trial court may substitute its judgment for that of the school board when the school board's actions are arbitrary and unreasonable. The facts of this case, however, are distinguishable from the facts in *Baker*. *Baker* involved a nonrenewal for reasons related to the "abil-ity, competence, or qualifications of the teacher as a teacher." Fercho's qualifications as a teacher are not at issue in this case. Although Fercho contends that several members of the board were out "to get rid of [her]," the board's stated reason for nonrenewing her contract was "reduction in staff." The school board made no allegations concerning her teaching ability.

In *Baker*, the reason for nonrenewal was that the teacher had on one occasion left his room unattended for 20 minutes to shovel snow from his driveway. He had an otherwise perfect record over seven years. No other allegations were made concerning the teacher's ability. In fact, the teacher received praise from the principal, the assistant principal, and the department chairman. We held that the teacher's nonrenewal in *Baker* based on the isolated incident was an arbitrary action by the board.

*Baker* was therefore a very unusual case, not comparable to this one. We do not believe the Montpelier School Board acted arbitrarily, even in view of testimony supporting Fercho's contention that some of the board members wanted to see her removed because they thought she was not a good teacher.

■■ Fercho next contends that she had additional protection from the Montpelier School District's "reduction in force" policy. The board adopted the reduction in force policy at its December 12, 1977, meeting. Generally, an administrative agency's rules and regulations adopted to govern its proceedings, if within the authority of the agency, are binding upon the agency as if they were enacted by the legislature. *Havener v. Glaser*, 251 N.W.2d 753, 761 (N.D. 1977) (North Dakota State Penitentiary must follow its regulations). The procedures set forth by the board for determining staff reduction have the force and effect of law. *Schnabel v. Alcester School District No. 61–1*, 295 N.W.2d 340, 341 (S.D. 1980).

■ The reduction in force policy states that, "preference in retention will be given to teachers with the longest district ser-

vice." Fercho contends that because she had nine years of experience with the district, that this clause required the board to keep her. No allegation is made, however, that any teacher with less tenure than Fercho was kept on the teaching staff. Fercho's only allegation is that Mrs. Limvere, who was rehired as a part-time librarian/English teacher, had less tenure than she did. The above quoted portion of the reduction in force policy, however, does not speak to rehiring, but rather only to retention. Additionally, Fercho could have applied for the part-time librarian/English teacher combination. Had she done so and then not been employed, the reduction in force policy may have been pertinent. Under the circumstances, it is not.

■ Next Fercho contends that the following statement in the reduction in force policy was violated by the board: "Staff members who have lost their positions because of this policy may request and be given consideration for reemployment if a vacancy for which they are qualified should occur." Fercho contends that she was qualified for the English/library position and that she requested to be given consideration for reemployment. The record does disclose that she requested employment with the Montpelier School District. It appears from the transcript, however, that each request was for her previous full-time position, and not the available part-time position. In fact, on cross-examination Fercho responded as follows:

"Q Did you ever give them the impression you would be interested in a part-time position?

"A No. I never talked to them so I couldn't give them an impression."

It therefore appears that Fercho did not request to be reemployed with the Montpelier School District for the open position. We conclude, therefore, that the reduction in force policy did not require the school board to refrain from nonrenewing Fercho's contract nor did it require the board to employ her for the part-time, English-library position.

The judgment is reversed.

SAND and PEDERSON, JJ., concur.

PAULSON, J., disqualified.

VANDE WALLE, Justice, concurring specially.

I agree with the majority opinion that the school board did not act arbitrarily, unreasonably, or unconscionably in determining to reduce faculty and combine teaching responsibilities for reasons of financial difficulty. However, I am uncomfortable with that portion of the opinion which concludes that the school board did not act arbitrarily, unreasonably, or unconscionably in failing to offer the part-time position to Fercho. When the reduction-in-force policy adopted by the school board is considered with the fact that Fercho had seniority and was qualified for the part-time position it appears to me that the school board, if it really desired to give maximum consideration to basic fairness and decency relating to the teacher's position and career, might well have affirmatively offered the part-time position to Fercho. A failure by the school board to do so arouses a suspicion that the school board had other reasons for not renewing the contract.

However, the provision in the reduction-in-force policy provides that teachers who have lost their positions because of the policy "may request" and be given consideration for reemployment if a vacancy for which they are qualified should occur. That provision, when considered with the fact that Fercho insisted then and continued to insist at oral argument that she was entitled to a full-time position, not a part-time position, causes me to reluctantly agree that the school board was not obligated to offer her the part-time position for which she was qualified. If it were not for Fercho's insistence on a full-time position I would favor reversing the district court and remanding the case with instructions that Fercho be awarded damages based upon the part-time rather than the full-time position. Despite my concurrence with the majority opinion in this instance I believe that in the

future school boards which do not renew a teacher's contract because of financial distress but create other full-time or part-time positions for which a nonrenewed teacher is qualified should "go the last mile" and affirmatively offer the nonrenewed teacher the newly created position. Such affirmative action on the part of the school board will be persuasive, at least to me, in instances in which it is alleged that the school board did not act with fairness and decency or that the school board had ulterior motives in not renewing the teacher's contract.