**Geoff LAW, Plaintiff and Appellant,**

v.

**MANDAN PUBLIC SCHOOL DISTRICT, a public corporation, Defendant and Appellee.**

**Civ. No. 11410.**

Supreme Court of North Dakota.

Aug. 12, 1987.

Charles L. Chapman, of Chapman & Chapman, Bismarck, for plaintiff and appellant.

William C. Kelsch, of Kelsch, Kelsch, Ruff & Austin, Mandan, for defendant and appellee.

VANDE WALLE, Justice.

Geoff Law appealed from the judgment of the district court of Morton County which dismissed with prejudice his complaint and denied his motion for a writ of mandamus. We affirm.

Law was hired as a building trades instructor at Mandan High School for the 1976–1977 school term. He taught building trades exclusively through the 1980–1981 school term. Because of a drop in enrollment in building trades beginning in the 1981–1982 school term, Law's teaching duties in that area were reduced to part time. Law was assigned other part-time teaching duties in physical education, industrial arts, and a CPR course. By the 1985–1986 school term, which was Law's last year of employment at Mandan, enrollment in building trades had decreased to a point that the department was eliminated. During that term Law taught three sections of physical education, one woodworking class in industrial arts, and one woodworking class for the trainable mentally handicapped.

On March 10, 1986, Mandan's school board voted to contemplate the nonrenewal of Law's teaching contract, and gave Law written notice of a hearing at which the contemplated nonrenewal would be considered. The reasons given for nonrenewal were: lack of enrollment, elimination of position, and lack of funds. During discussion with the principal, Wallace Schmeling, Law was informed that the position being eliminated was the building trades position. Because Law was hired to fill that position, only he was being contemplated for nonrenewal, rather than the three teachers who had been hired to teach industrial arts.

A nonrenewal hearing was held on March 25, 1986. Law was present and represented by counsel. At the hearing Pius Lacher, Mandan's superintendent, presented evidence in support of nonrenewal, including Mandan's reduction-in-force policy [hereinafter RIF]. Law questioned the procedure used in deciding which teacher was to be contemplated for nonrenewal. Mandan's administration took the position that because of a drop in enrollment in building trades, that teacher no longer was required. Because Law was hired for that position he was the logical one to be nonrenewed. When questioned regarding Law's qualifications to teach industrial arts, Schmeling stated that whether or not Law was qualified in that area was not pertinent to the hearing. Lacher stated that the length of Law's employment was not considered and that he was not compared to other teachers regarding the factors in Mandan's RIF policy. At the completion of this testimony, Law requested a continuance of the hearing, which was granted.

At the continued hearing on March 31, Law presented evidence of his qualifications. Law attempted to compare himself to the three industrial arts teachers. He testified that he had been employed ten years by the Mandan Public School District. The other teachers had been employed ten, eight, and five years, respectively. Law testified that he and only one of the other three teachers has a master's degree. Law also testified that he probably had more experience in industrial arts than any of the other three in view of his ten years at Mandan as well as six years or previous teaching experience.

Following the continued hearing, the Mandan school board voted to nonrenew

Law's teaching contract. On April 3, 1986, Law was given a letter of nonrenewal.

Law served a complaint on the Mandan Public School District for breach of contract, failure to perform a required evaluation, and nonrenewal for insufficient reasons. Law moved the trial court to issue a writ of mandamus to the School District requiring it to reinstate him or, in the alternative, award him damages. The district court issued an alternative writ ordering the School District to reinstate Law or to show cause why the court should not issue a writ of mandamus to reinstate Law to his teaching position.

A hearing was held before the district court on August 6, 1986, and, at the conclusion of testimony, the court dismissed Law's complaint and denied his motion for a writ of mandamus.

The several separate issues raised by Law may be condensed to essentially three:

(1) Is the reduction-in-force policy adopted by the School District a part of the contract between the District and the teacher?

(2) If the reduction-in-force policy is a part of the contract did the School District breach that contract?

(3) Were the proper procedures followed?

I

In its memorandum opinion delivered from the bench within minutes after the completion of the hearing, the trial court held that an express-contract theory did not apply, and in its findings the trial court concluded that,

"general contract law does not apply in this case because of the development of the 'continuing contract law' created by § 15–47–38(5), and the body of case law construing this special relationship. If express contract law were to apply, Law's contract would have automatically expired at the end of the 1985–86 school term, and there would be no need for a RIF policy. Mandan's RIF policy was adopted to supplement and be applied with this law as construed by the con-

tinuing contract law and *Dobervich* [*Dobervich v. Central Cass Public School Dist.*, 302 N.W.2d 745 (N.D.1981)] and *Reed* [*Reed v. Edgeley Public School Dist. No. 3*, 313 N.W.2d 775 (N.D.1981)] control the relationship of the parties. Under this law, the District Court is limited in its review of a nonrenewal in the following respects:

"(A) Non-renewal procedures must be followed.

"(B) The reasons given for non-renewal must be legally sufficient and must not be frivolous or arbitrary.

"(C) The Board must not abuse its discretion under the facts."

The School District agrees that the RIF policy is a part of the contract between the District and its teachers. Although the policy was adopted unilaterally by the District and was not a part of the negotiation process authorized by Chapter 15–38.1, N.D.C.C., an employer may be contractually bound by promises, express or implied, in employee handbooks with respect to job security and termination procedures. *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120 (N.D.1986); *Hammond v. North Dakota State Personnel Board*, 345 N.W.2d 359 (N.D.1984). The RIF policy is not incompatible with the provisions of Section 15–47–38(5), N.D.C.C., which we construed in *Dobervich* and *Reed* to mean that except for procedural matters a trial court's review of the reasons given for nonrenewal of the teacher's contract and the evidence submitted at the hearing pertaining thereto is limited to:

"(1) determining whether or not the reasons given are in accordance with the statutory provisions, i.e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board has abused its discretion in reaching the nonrenewal decision." *Dobervich, supra*, at 751–752.

■ In *Reed*,[1] we concluded that Section 15–47–38 does not explicitly or implicitly require a school board to articulate its reasons for selecting one teacher over another for nonrenewal. As we will discuss in more detail, it is apparent that the RIF policy does contemplate a consideration of the qualifications of the various teachers in the system. Thus the RIF policy imposes an additional contractual obligation upon the school district in reaching its decision to not renew a particular teacher. Section 15–47–38(5) was obviously intended for the benefit of the teachers. Provisions such as those in the RIF policy which increase the minimal protection provided to the teachers are not inconsistent with that intent and are to be given the same effect as other contractual provisions.

Nor do we believe the trial court held that the RIF policy was not a part of the employment contract. Rather, the remarks contained in the opinion delivered from the bench shortly after the hearing indicated that the trial court did not believe the RIF policy applied to this particular fact situation because it required comparison only to a like position and that since Law's position was eliminated, there was no other position with which it could be compared. That particular holding is the subject of the second and most significant issue of this case.

## II

The real difference between the position espoused by Law and that of the School District involves the interpretation of the RIF policy. Law argues that the policy requires comparisons between himself and all other teachers in a position which Law, by academic training and teacher credentials, is qualified to fill, regardless of whether or not he has taught the subjects taught by the teachers in those other positions. He also contends that such a comparison was not made by the administration officials and they thereby breached the

contract when his contract was not renewed without such a comparison.

Law, as we have noted, is qualified to teach industrial arts as well as building trades. Although the two are related they are separate courses of study; the industrial arts course is a general arts course and the building trades course is a practical trade course.

The RIF policy provides:

"The Mandan School Board realizes that the possibility of (1) decreased enrollment or (2) loss of revenue may occur. It is realistic to assume that staff reductions will then be necessary. Reductions in staff, as they become necessary, will be made on the basis of what has the least detrimental effect on children. In general, this objective dictates a staff reduction policy which:

"(a) Retains the strongest teachers

"(b) Avoids undue increases in class size

"(c) Reserves a place for the exceptional younger teacher

"When a teacher is released, the decision will be based on a composite of the following criteria:

"(1) Contributions made to the teaching profession and the school district

"(2) Adaptability to other assignments

"(3) Academic and professional preparation beyond minimum certification requirements

"(4) Grade levels and subject areas taught

"(5) Effectiveness in teaching and in related professional responsibilities

"(6) Leadership qualities

"(7) Evidence of professional growth

"When teachers are judged to be similarly qualified and significant differences in length of full-time district service exist, preference in retention will be given to teachers with the longest district service. Recommendations for termination under this policy will be made by the Principal

---

1. Law contends that the RIF policy was unilaterally adopted by the Mandan School District as a response to *Reed* because it, and other school districts, "realized that the statutory framework, as interpreted by this Court, leaves large gaps in any protection to school teachers who have accumulated education, experience, and expertise over the years within a school district." However, the decision in *Reed* was issued in 1981. The Mandan RIF policy was adopted in 1979.

involved and the Superintendent of Schools for action by the Mandan School Board. A conference prior to School Board action will be held between the teacher and the administration. Notification of contemplated non-renewal will follow section 15–47–38 of the North Dakota Century Code.

"Staff members who have lost their positions because of this policy, may request and be given full consideration for re-employment if a vacancy for which they are qualified should occur."

The trial court concluded that the RIF policy applied only to similar positions:

"... though Mandan's RIF policy may call for comparisons, this should involve a comparison of like positions, and because Mandan had only one teacher in the building trades, there was no other position to compare Law to. Under the facts in this case, Mandan was not required to compare Law to others who were teaching industrial arts because this is a different credentialed field."

We need not decide whether the policy requires the School District to compare Law with every other teacher in the system who is in a position for which Law may be qualified by credentials to teach. However, in view of the particular facts of this case, we believe the trial court's construction of the policy was too narrow. Although the credentials for teaching industrial arts may be different from those required for teaching building trades, it is apparent the two are closely related. It is undisputed that Law was hired to teach building trades in Mandan and left a position as an industrial arts teacher in Jamestown. It was Law's education in industrial arts that qualified him to teach building trades although an academic degree is not required to teach building trades. Law did, in fact, teach industrial arts courses part time in the years immediately preceding his nonrenewal because of declining enrollments in the building trades courses. The criteria listed in the RIF policy which con-

cern adaptability to other assignments and grade levels and subject areas taught are directly concerned with just such situations.

Nevertheless, the trial court, apparently recognizing that there was uncertainty as to the application of the policy to the facts before him, concluded:

"If the RIF policy were construed to require Mandan to compare Law to the industrial arts teachers, this Court concludes that the evidence established that Mandan's Board did in fact compare Law to the industrial arts teachers. Evidence of Law's credential in industrial arts and the qualifications of the other teachers was considered and this issue was fairly presented. The RIF policy was considered and followed and the Board's decision to non-renew was not an abuse of its discretion.

.    .    .    .    .

"If Mandan's RIF policy gives Law contract rights outside of, or independent of, his continuing contract rights, which the Court concludes it does not, then the Court further concludes that such rights were not violated because Mandan did, in fact, comply with its RIF policy."

Law contends that the finding that the school board did compare Law to the industrial arts teachers must be set aside as being clearly erroneous under the standard set forth in Rule 52(a), N.D.R.Civ.P. The testimony concerning the consideration by the school board of the qualifications of the industrial arts teachers at the March 25 and March 31 hearings concerning Law's nonrenewal is in dispute.[2] The testimony of the principal and the superintendent of the District, who recommended Law's nonrenewal, indicates that they did not compare Law's qualifications with the other industrial arts teachers at the time they recommended Law's nonrenewal because they did not consider the qualifications of instructors in another department applica-

**2.** No transcripts of the March 25 and March 31 meetings of the school board were made. Minutes, which are a summary of the meetings, were kept by the clerk of the School District and

introduced into evidence. Other witnesses who were present at the meetings testified as to their recollection of what was discussed and not discussed at the meetings.

ble or pertinent. It is also apparent, however, that by the completion of the second hearing on March 31, the school board had been made well aware of Law's position. In the words of Law's brief on appeal:

"At the time of the school board meeting, Geoff [Law] informed the school board that, to the best of his knowledge, only one Industrial Arts teacher had years of experience equal to Geoff's experience, 10 years, and that the other two Industrial Arts teachers had 8 and 5 years of experience. Geoff also stated that only one of those teachers had an education which was equivalent to Geoff's. Geoff was unable to elicit any further information regarding the three Industrial Arts teachers since the school administration advised the school board that such information was not pertinent to the meeting."

■ Because, as Law himself has urged, we are concerned with the RIF policy as a contractual matter, and not the provisions of Section 15–47–38(5) directly, it is the school board's comparison of Law's qualifications with the other teachers which is significant rather than the administration's comparison. The statute requires that at the meeting the administrator shall substantiate the reasons for nonrenewal with written or oral evidence and that the board shall "determine whether or not the administrator has, in fact, substantiated the reasons." The reason for the nonrenewal was the elimination of the department and the need to reduce the number of teachers. That reason was undisputed. As this court noted in *Reed, supra,* the statute does not explicitly or implicitly require a school board to articulate its reasons for selecting one teacher over another for nonrenewal. Thus the statutory requirement that the administrator substantiate the reasons for nonrenewal does not extend to the teacher chosen for nonrenewal. Under the RIF policy the superintendent and the principal are to make recommendations based on the policy but it is the board which must take the action and we do not extend the statutory requirements for substantiation by the administrator to the RIF policy.

■ Furthermore, there is testimony that the superintendent did compare the teachers in industrial arts with Law but that he believed criterion No. 4, the grade levels and subject areas taught, was controlling in this particular instance. Although the policy states that the decision as to which teacher will be released will be based on a composite of the listed criteria, the weight to be given to each criterion in the policy is not specified therein. Considering that Law was hired to teach in the building trades department which was being eliminated and considering that the other teachers were hired to teach in the industrial arts department, we cannot conclude that the administration or the school board violated the RIF policy in determining that, notwithstanding Law's credentials in comparison to those of the other teachers, criterion No. 4 was conclusive in this instance. Different facts might obviously bring different results. For example, if a teacher is hired for a department and subsequently transferred to another department which is eliminated, criterion No. 4 may not be so significant. Here, Law asks that he be retained for a position for which he was not hired in preference to a teacher who was hired for and who did teach in that position. We cannot conclude that the plain language of the policy requires such a result.

Inasmuch as the record reflects that the school board was made aware of Law's qualifications and was made aware that his education and length of service were, for the most part, superior to that of the industrial arts teachers, but that the administration of the District considered criterion No. 4 of the RIF policy to be conclusive, the trial court's finding that the school board compared the qualifications of Law to those of the industrial arts teachers is not clearly erroneous.

### III

■ In addition to Law's complaint that the School District did not follow its own RIF policy in not renewing his contract, he contends that the School District acted unreasonably in not renewing his contract

because it failed to comply with that portion of Section 15–47–38(5) which provides:

"The reasons given by the school board for its decision not to renew a teacher's contract must be drawn from specific and documented findings arising from formal reviews conducted by the board with respect to the teacher's overall performance. Each district shall have an established system through which two written evaluations are prepared for every teacher employed by the district during each school year. These written performance reviews shall be completed and made available to the teacher no later than December fifteenth for the first review and March fifteenth for the second review each year. The reasons given by the board for not renewing a teacher's contract must be sufficient to justify the contemplated action of the board and may not be frivolous or arbitrary but must be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff."

It is undisputed that the second evaluation was not reduced to writing until April 4, 1986. The trial court determined that this was harmless error as applied to the facts of this case, concluding:

"When non-renewal action is taken on grounds relating to the ability, competence or qualifications of a teacher, written evaluations are essential. However, in this case, the contemplated non-renewal did not involve a question of Law's ability, but was related solely to other necessities of the District, being lack of enrollment, elimination of position and lack of funds. Law's competency as a teacher was not in issue, and, therefore, the presence or absence of a timely written evaluation would not be relevant and would be immaterial to the decision to be made. Further, when non-renewal is based on necessities other than ability, the reasons for non-renewal cannot be drawn from 'specific and documented findings arising from formal reviews'. (§ 15–47–38(5))"

Law concedes that the most obvious application of the policy requiring written evaluation relates to the competency of a teacher and to nonrenewal of the teacher's contract for cause other than a reduction in force due to reduced enrollment and loss of revenue. However, he maintains that a written evaluation of a teacher's performance would nevertheless be valuable in choosing the teachers to be retained and those whose contracts will not be renewed. Assuming the School District was required to give each of the criteria in the policy equal weight, Law's position would be more persuasive. But we have already indicated that the weight to be given to each of the criteria is, in the absence of a provision in the RIF policy to the contrary, a matter for the School District to determine. It has determined to give the most weight to grade levels and subject areas taught and we have indicated that is not contrary to the plain terms of the policy.

Law further urges that we apply the "strict compliance" standard that the court applied in such cases as *Henley v. Fingal Public School District # 54*, 219 N.W.2d 106 (N.D.1974). In *Henley*, the school district sent the teacher a notice that he would "not be offered a contract for the next school year," rather than informing him that the school board was contemplating not renewing his contract. The rationale for this court's conclusion that the notice did not comply with the statute was:

"The notice given to the appellant was one of finality, of the kind the law requires in informing the teacher of 'the final decision' of its failure to renew his teacher's contract. Notice of the final decision cannot be used as a substitute for the notice of the contemplated course of action. If a teacher is to benefit from a meeting and the opportunity to appear at the meeting and present his side with the hope that he may dissuade the board in its contemplated action, the action must only be contemplated and not final." *Henley, supra,* at page 110.

█ It is apparent that the *Henley* court was of a belief that the school board had made up its mind to not renew Henley's

382

contract, notwithstanding his statutory right to a hearing. We decline to extend that "strict compliance" principal of that case to this situation in which the failure to reduce Law's evaluation to writing played no part in the school board's determination. Law's performance as a teacher never was an issue in the School District's determination to not renew his contract.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and GIERKE and MESCHKE, JJ., concur.

LEVINE, Justice, dissenting.

Law is qualified by degree to teach industrial arts and did teach some industrial arts from 1981 until his nonrenewal in 1986. It is that synthesis of qualifications and experience that underlies Law's argument that under the RIF policy, he should have been compared with the industrial arts teachers, but was not.

Like the majority, I agree that the trial court was wrong in holding that the reduction-in-force policy was not contractual and that even if it were contractual, the policy did not apply to the facts in this case. However, I dissent from the majority's approval of the trial court's finding that the "evidence of Law's credentials in industrial arts and the qualifications of the other teachers were considered and this issue was fairly presented" to the school board.

I believe *Dobervich v. Central Cass Public School District*, 302 N.W.2d 745 (N.D. 1981), is instructive on how we should review a trial court's review of whether a school board did what it was called upon to do. In *Dobervich*, it was a statute that directed the school board to do a particular thing. It would be sheer legerdemain to draw a distinction between a statutory mandate to a school board and a contractual mandate. Whether it is the legislature or a contract that defines what the school board must do, it seems to me, the board must do it in either event.

In *Dobervich* the issue was whether the school board followed the statutory requirement that it give serious consideration to the damage to a teacher's professional status and reputation resulting from nonrenewal. We concluded that a mere statement on the record that a school board considered such matter "is neither decisive nor indicative of whether or not the board took this matter into consideration...." *Dovervich, supra* at 753. Rather, "whether or not the board has met this obligation of the statute is to be determined from the entire record." *Dobervich, supra* at 754.

I have carefully reviewed the entire record. Not only is there no statement that the board considered a comparison of Law with the other three industrial arts teachers, there is precious little indication that such a comparison was considered at all, and no indication that the issue was fairly presented.

In my view, the record does not sustain the trial court's finding that the issue of relative credentials and qualifications was fairly presented or considered.

The administration offered no evidence upon which the board could have evaluated Law's credentials or performance against those of the other three industrial arts teachers. That is so because the administration misinterpreted the RIF policy to make such a comparison unnecessary because Law was hired for building trades and there were no other building trades teachers to compare him with. Thus, the administration misconstrued the RIF policy and then made its recommendation based on its misconstruction.

While Law argued to the board that the policy had been incorrectly interpreted by the administration and that his credentials and experience were better than the other industrial arts teachers, that is hardly the procedure envisaged by the RIF policy. Even the majority agrees that the RIF policy was meant to be a benefit to the teachers. It can hardly be a benefit for a teacher to bear the burden of presenting to the board what is, under the RIF policy, the administration's responsibility—an objective comparison of qualifications based on the administration's exercise of judgment after examining all of the data available to the administration. Information

about the other teachers' backgrounds is far more accessible to the administration. Comparative data, presented to the Board by the administration, is also free from any gloss of self-interest.

The policy provides that it is the administration that is to implement the RIF policy in the first instance by comparing the teachers and making a recommendation for nonrenewal based on that comparison. That procedure was not followed. The procedure which was followed and which the trial court approved, and the majority condones, reminds me of the scenario where a trial court instructs the jury that a white male may not be found liable for negligent conduct. The attorney for the plaintiff then argues to the jury that a white male most certainly may be held negligent. The jury finds the white male defendant not negligent. Would we say that the jury heard the argument of counsel and proceeded to affirm its verdict? I doubt it. The analogy, I believe, is fair and, therefore, I dissent.