Bonnie BELCOURT, Stanley Kruger, and Newton Dick, Plaintiffs and Appellants,

and

Shirley Gores and Sandra Schloss, Plaintiffs,

v.

FORT TOTTEN PUBLIC SCHOOL DISTRICT NO. 30, Defendant, Third–Party Plaintiff and Appellee,

v.

Leonard BEAR KING, Third–Party Defendant.

Civil. No. 890122.

Supreme Court of North Dakota.

April 12, 1990.

Chapman & Chapman, Bismarck, for plaintiffs and appellants, argued by Daniel J. Chapman.

Pearce & Durick, Bismarck, for defendant, third-party plaintiff, and appellee, argued by Gary R. Thune.

MESCHKE, Justice.

Bonnie Belcourt, Newton Dick, and Stanley Kruger appealed from summary judgments dismissing their claims against Fort Totten Public School District No. 30 [Board] for wrongful nonrenewal of their teaching contracts. We affirm.

Belcourt, Dick, and Kruger were employed by the Board during the 1985–86 school year. Dick and Kruger had been employed by the Board as junior and senior high school mathematics teachers since the 1981–82 school year. Belcourt had been employed by the Board as a learning disabilities tutor-in-training since the 1984–85 school year. During spring 1986, the Board voted to not renew the teaching contracts of Dick and Kruger because of "[c]ause due to incompetence." Belcourt's contract was not renewed because of "[l]ack of funds."

Belcourt, Dick, Kruger, and two other teachers sued the Board, seeking damages for violation of civil rights, libel and slander, and wrongful nonrenewal. By a third-party action, the Board sought indemnity from its former superintendent, Leonard Bear King. The Board prevailed in its third-party action against Bear King. The Board then moved for partial summary judgments dismissing the wrongful nonrenewal claims of Belcourt, Dick, and Kruger. The trial court determined that the Board had not abused its discretion in the nonrenewal decisions and granted summary judgments. The remaining claims were eventually settled and a final judgment was entered dismissing all claims of the plaintiffs subject only to the rights of Belcourt, Dick, and Kruger to appeal the partial summary judgments dismissing their wrongful nonrenewal claims. This appeal followed.

■ The teachers' major argument on appeal was that the trial court used an incorrect standard in reviewing the Board's nonrenewal of their teaching contracts.

In *Dobervich v. Central Cass Public School District*, 302 N.W.2d 745, 751–752 (N.D.1981), we stated the standard for judi-

cial review of a school board's decisions to nonrenew teachers' contracts:

> Because there is no statute providing for an appeal from a decision of the board to not renew a teacher's contract nor any statutory standard by which the evidence submitted at the nonrenewal hearing is to be measured, and because the trial court may not substitute its judgment for that of the board, we conclude that, except for procedural matters, the trial court's review of the reasons given for nonrenewal of the teacher's contract and the evidence submitted at the hearing pertaining thereto is limited to: (1) determining whether or not the reasons given are in accordance with the statutory provisions, i.e., they are not frivolous or arbitrary but, rather, are related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in teaching staff; and (2) determining—if those reasons are legally sufficient—whether or not under the facts of the case the school board has abused its discretion in reaching the nonrenewal decision. Such a review will, in our estimation, permit the teacher his day in court and, at the same time, will not unduly involve the courts in the administration of the school system. [Footnotes omitted].

The teachers did not propose that procedural requirements were not met or that "incompetence" and "lack of funds" were legally insufficient reasons for nonrenewal. Rather, they argued that the trial court erred in applying the abuse-of-discretion standard from *Dobervich* because 1983 legislative amendments to NDCC 15–47–38(5)[1] now require the court to use a preponderance-of-the-evidence standard "as is the case in other administrative decisions." We disagree.

The 1983 amendment to NDCC 15–47–38(5) replaced the language, "The school

---

1. NDCC 15–47–38(5) now reads:

5. The school board of any school district contemplating not renewing a teacher's contract, as provided in section 15–47–27, shall notify the teacher in writing of such contemplated nonrenewal no later than April fifteenth. The teacher must be informed in writing of the time, which may not be later than April twenty-first, and place of a special school board meeting for the purpose of discussing and acting upon such contemplated nonrenewal. The teacher must also be informed in writing of the reasons for nonrenewal. The reasons given by the school board for its decision not to renew a teacher's contract must be drawn from specific and documented findings arising from formal reviews conducted by the board with respect to the teacher's overall performance. Each district shall have an established system through which written evaluations are prepared for every teacher employed by the district as provided in section 15–47–27. The reasons given by the board for not renewing a teacher's contract must be sufficient to justify the contemplated action of the board and may not be frivolous or arbitrary but must be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff. At the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The administrator shall substantiate the reasons with written or oral evidence presented at the meeting. All witnesses are subject to questioning for the purposes of clarification. At the meeting, the board shall discuss the reasons and determine whether or not the administrator has, in fact, substantiated the reasons. If the board finds that the reasons have not been substantiated, the nonrenewal proceedings will be dismissed. The meeting must be an executive session of the board unless both the school board and the teacher agree that it is to be open to other persons or the public. The teacher may be represented at the meeting by any two representatives of his own choosing; and the teacher's spouse, or one other family member of the teacher's choice, may also attend the meeting if the teacher so desires. In addition to board members, the business manager of the school district, and the superintendent, the school board may be represented by two other representatives of its own choosing at such executive session. At the meeting, if the teacher so requests, he must be granted a continuance of not to exceed seven days. No claim for relief for libel or slander lies for any statement expressed either orally or in writing at any executive session of the school board held for the purposes provided for in this section. The determination not to renew a contract if made in good faith is final and binding on all parties. Final notice of the determination not to renew a contract must be given in writing by May first as provided in section 15–47–27.

board shall give an explanation and shall discuss and confirm at the meeting its reasons for the contemplated nonrenewal of the contract," with the following:

> The administrator shall substantiate the reasons with written or oral evidence presented at the meeting. All witnesses are subject to questioning for the purposes of clarification. At the meeting, the board shall discuss the reasons and determine whether or not the administrator has, in fact, substantiated the reasons. If the board finds that the reasons have not been substantiated, the nonrenewal proceedings will be dismissed.

1983 N.D.Sess.Laws Ch. 232, § 1. The school board function was somewhat altered.

The amendment now requires the school administrator to substantiate the reasons with evidence and the school board to discuss and determine whether the administrator has substantiated the reasons. However, it does not naturally flow from the Legislature's redefinition of the duties of the board that the Legislature designated a different standard of judicial review. A comparison of the bill introduced in the 1983 legislative session with the eventual enactment contradicts the suggestion that the Legislature intended an expanded role for the judiciary in teacher nonrenewal proceedings. As introduced, the bill proposed major and extensive revisions to the teacher nonrenewal law, including extension of a teacher's right to appeal a school board nonrenewal decision to the district court and to have the case "triable to a jury" unless a jury was waived. These proposed revisions were not enacted.

The Legislature is capable of unequivocally enacting its intention that the preponderance-of-the-evidence standard apply to proceedings involving teachers. For example, it has specifically incorporated parts of the Administrative Agencies Practices Act, NDCC 28-32, including the preponderance-of-the-evidence standard at NDCC 28-32-19, into the law on discharging teachers. *See* NDCC 15-47-38(2). It has not done so for nonrenewal of teachers. We decline to hold that the 1983 amendment to NDCC 15-47-38(5) implicitly incorporated the preponderance-of-the-evidence standard which is generally used for review of administrative agency decisions. We conclude that the 1983 amendment did not overrule *Dobervich* and that the abuse-of-discretion standard remains applicable to review of nonrenewal of teachers' contracts.

The teachers asserted that, for several reasons, genuine issues of material fact existed which made summary judgment inappropriate. First, they argued that the trial court did not have a complete record of the nonrenewal meetings before the Board. With its motion for summary judgment, the Board submitted the exhibits, the Board minutes, and the transcripts prepared from tape recordings of all three meetings. The transcript from the Dick hearing contained several blank spaces representing inaudible testimony. The transcript of the Kruger hearing also contained blank spaces and ended before the hearing did. The Belcourt hearing was set forth in narrative form and was presumably prepared by the Board's secretary. The teachers did not contend that the materials submitted by the Board with the summary judgment motion were inaccurate. Instead, the teachers urged that summary judgment was improper because the Board made no allegation "that the exhibits or the fragmented transcripts constitute the entire body of evidence to show what was presented to the school board."

The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact. The party resisting the motion may not simply rely upon the pleadings but must present competent evidence by affidavit or other comparable means which raises an issue of material fact. *Production Credit Ass'n of Fargo v. Ista*, 451 N.W.2d 118, 120 (N.D. 1990). We believe that the evidence submitted by the Board with its motion for summary judgment was a sufficient record of what occurred at the nonrenewal hearings to enable the court to apply the *Dobervich* test. If the teachers believed this material did not accurately reflect what occurred at the hearings, did not include

relevant evidence, or was erroneous in any respect, it was their responsibility to submit evidence supporting those assertions to the trial court. Because the teachers did not do so, the trial court was not required to hold a trial to reconstruct what occurred during fragmentary gaps in the transcripts of the nonrenewal meetings. Absent contradictory evidence, the transcripts were adequate.

■ The teachers also argued that summary judgment was inappropriate because a genuine issue of material fact existed as to whether the administrator substantiated the reasons for the nonrenewals. We disagree. Where the record of the school board proceedings is adequate and uncontradicted, and when the only issue before the court is whether the school board abused its discretion in reaching the nonrenewal decision, no material factual dispute remains for resolution. *See Reed v. Edgeley Public School Dist. No. 3,* 313 N.W.2d 775, 780 (N.D.1981); *cf. Pulkrabek v. Morton County,* 389 N.W.2d 609, 613–614 (N.D.1986). " 'Abuse of discretion' is a legal question" for the court. *Gere v. Council Bluffs Community School Dist.,* 334 N.W.2d 307, 311 (Iowa 1983), and cases cited therein; *see also Fercho v. Montpelier Public School Dist. No. 14,* 312 N.W.2d 337, 340 (N.D.1981). There was no material factual dispute here which forestalled summary judgment.

### Belcourt

■ Belcourt asserted that the Board abused its discretion in not renewing her contract for "lack of funds." A school board abuses its discretion in determining not to renew a teacher's contract "when it acts in an arbitrary, unreasonable, or unconscionable manner." *Dobervich,* 302 N.W.2d at 752 n. 7. We conclude that the Board did not abuse its discretion.

Bear King presented several exhibits to the Board on the financial condition of the school district. He testified that, because of possible cuts in state foundation aid payments and cuts in federal funding, the school district could face a "budget de-crease" of as much as $148,000 in the next school year.

Belcourt was one of three learning disabilities tutors-in-training employed by the Board. No qualified special education director or teacher was employed by the Board at the time. Belcourt asserted that the Board could not refuse to renew her contract, as well as the contracts of the other tutors-in-training, for lack of funds because special education was a mandatory program. However, there was evidence in this record that the school district would receive substantially greater state reimbursement if one qualified special education director or teacher was hired than if its three tutors-in-training were continued, thereby alleviating some strain on the budget while allowing retention of the special education program. Bear King informed the Board of options for providing special education during the following year.

We believe the Board received sufficient information about the finances of the school district to determine, in good faith, that the reason given for Belcourt's nonrenewal was substantiated. We conclude that the Board did not abuse its discretion in not renewing Belcourt's teaching contract.

### Dick and Kruger

■ Dick and Kruger asserted that the Board abused its discretion in not renewing their contracts for "[c]ause due to incompetence" because there was no satisfactory evidence of "incompetence" before the Board. We conclude that the Board did not abuse its discretion.

■ In the context of a teacher's contract, "incompetency" has varied meanings. It is clear that a lack of that knowledge required to be taught to one's students would constitute incompetency, as would the inability of a teacher to impart such knowledge effectively to his students. But incompetency is not necessarily so confined, and may relate, and not uncommonly does, to other aspects of the teacher's performance of classroom duties, such as the maintenance of discipline. In addition, matters such as the physical

mistreatment of students may be held to prove incompetency upon the part of the teacher. And it may be held that a physical inability to perform the duties of a teacher will sustain a finding of incompetency.

Annot., *What constitutes "incompetency" or "inefficiency" as a ground for dismissal or demotion of public school teacher*, 4 A.L.R.3d 1090, 1094–1095 (1965) [Footnotes omitted]. Although incompetency "does not invoke subjective analysis of standards of morality or professionalism which vary from individual to individual dependent on time, circumstances or custom" [*Perez v. Commission on Professional Competence*, 149 Cal.App.3d 1167, 197 Cal.Rptr. 390, 396 (1983) ], it generally "encompasses deficiencies in personality, composure, judgment and attitude which have a detrimental effect upon a teacher's effectiveness." *Hamburg v. North Penn School Dist.*, 86 Pa.Cmwlth. 371, 484 A.2d 867, 870 (1984). "Incompetence" connotes a lack of some requisite ability.

In this case, Superintendent Bear King presented the Board with his evaluations of Dick and Kruger during 1986. Dick and Kruger had used an individualized teaching approach to mathematics which permitted the students to progress at different speeds. Dick and Kruger had taught mathematics at the school for five years and had been "team" teaching the students during the last two years. In his evaluations Bear King noted various deficiencies, including a lack of individualized lesson plans for the students or groups; lack of anticipatory sets and objectives; inadequate communication with and lack of positive reinforcement of the students; and a general lack of organization in the classroom. Classes did not start on time and, according to Bear King, Kruger did not "tend to each" student during the class period. Bear King further testified that, based on his observational visits, Dick "did not demonstrate that he could use his knowledge ... and apply it to the classroom."

Dick and Kruger introduced SRA test scores of their students in an attempt to show that the students' achievements in mathematics were greater than their composite score in other areas tested. However, in four of the five classes shown, the results also showed that the students were, on a class average, significantly below grade level in their mathematics achievement. This caused board members to question why their children were receiving A's and B's in mathematics, but were functioning well below their grade level. In addition, board members questioned the propriety of the teachers' revelation of SRA test scores of individual students at the hearing.

This record tells us that the board members discussed the evidence and questioned the participants during relatively lengthy proceedings. We agree with the trial court that the Board had sufficient information before it to determine, in good faith, that the reasons given for the nonrenewal of Dick and Kruger were substantiated. We conclude that the Board did not abuse its discretion in not renewing the teaching contracts of Dick and Kruger.

Accordingly, the summary judgments are affirmed.

ERICKSTAD, C.J., and GIERKE, J., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the result reached in the majority opinion.

I write separately to observe that the "issue of material fact" which the majority concludes does not exist has reference to the record made before the school board. There is no doubt there is disagreement as to the underlying facts and whether or not those facts entitled the school board to not renew the contracts. The teachers were not prevented from submitting any pertinent evidence to the school board. The board is to determine which evidence it will believe and I agree that whether or not the board abused its discretion in acting on those facts is a legal question for the court. The summary judgment in these cases applies somewhat differently than it does in the ordinary legal action wherein the un-

derlying facts are at issue. In those instances summary judgment is *improper.* Here, those underlying facts, although in dispute, have already been considered by the school board and the only issue of material fact for the court to consider relates to the record made before the school board. Nevertheless, I am uncomfortable applying the ordinary summary judgment holdings to the issue of the completeness of the record as opposed to the underlying facts.

In many instances there is little or no record made of the proceedings before the school board because the board is not required to keep a verbatim record of the proceedings in nonrenewal such as it must with regard to a discharge. *See* § 15–47–38, NDCC. However, where a record is kept and relied upon for purposes of summary judgment, *i.e.,* that there is no question of fact as to the proceedings before the board and the only issue remaining is an issue of law, it appears to me that the moving party ought to present a total record. Although the majority concludes that it was the teachers' responsibility to submit evidence showing the record did not accurately reflect what transpired at the nonrenewal hearings, that should only apply where a substantial portion of the record is submitted with the summary judgment motion. In this instance I believe that was done. In those instances in which the only "record" is the minutes of the meeting or a summary prepared by the board clerk, I would not reach such a conclusion.

With the advent of portable recording devices I expect motions for summary judgment will be a common policy in these proceedings. Although today we affirm a procedure whereby that policy is approved, we ought to caution school boards and teachers that a substantial record will be required to sustain a motion for summary judgment if the content of the record is attacked. I would not place all the responsibility on the respondent, be it the teacher or the school board, in every circumstance.

Finally, as to the merits involving Dick and Kruger, it appears some of the concerns arose as a result of a change in the administrator of the school, *i.e.,* the previous administrator approved the "team" teaching concept whereas the new administrator, Mr. Bear King, did not. Although I might question whether or not this would be cause for nonrenewal of the teaching contracts, at least without notice, it appears from the record before us that Mr. Bear King did note certain problems in his evaluations but apparently the teachers continued their approach notwithstanding those evaluations. Had the teachers not been given an opportunity to adjust their teaching approach, I would be hesitant to affirm, for our statute requires evaluations as a basis for nonrenewal. *See* § 15–47–38(5), NDCC. ["The reasons given by the school board for its decision not to renew a teacher's contract must be drawn from specific and documented findings arising from formal reviews conducted by the board with respect to the teacher's overall performance. Each district shall have an established system through which written evaluations are prepared for every teacher employed by the district...."] The obvious reason for this requirement is to give notice to a teacher of the deficiencies in performance as found by the administration and an opportunity for the teacher to correct those deficiencies. In those instances in which a previous administration has approved teaching methods, a subsequent administration that disapproves such methods should be particularly careful to assure that the teacher has been given notice of the disapproval and the opportunity to adjust teaching methods. At that stage, at least, this does not appear to be a matter of ineptness; rather it appears to be a difference in philosophy of teaching. Only when the teacher refuses to adjust can it be labeled incompetence.

LEVINE, J., concurs.