Avis **KENT, Plaintiff and Appellant,**

v.

**SAWYER PUBLIC SCHOOL DISTRICT NO. 16, Defendant and Appellee.**

**Civ. No. 910397.**

Supreme Court of North Dakota.

May 6, 1992.

Chapman and Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendant and appellee; argued by Walfrid B. Hankla.

MESCHKE, Justice.

Avis Kent appeals a judgment dismissing her complaint against Sawyer Public School District No. 16, seeking damages for her wrongful nonrenewal as an elementary teacher and for sex discrimination in not rehiring her for a vacancy. We affirm.

Faced with continuous budget deficits and declining enrollments, the District sought to reduce expenses for its upcoming 1989–1990 school term. When other curtailments of programs and services did not remove the anticipated deficit, the District chose to combine the second and third grades, and to thereby eliminate one elementary teacher.

The written policy of the District declares that "[w]hen reduction of professionally certified staff becomes necessary because of, but not limited to declining enrollment, program curtailments, uncertainty of funds, or other reasons of necessity, the Board shall have the sole right to determine the scope of the reduction." The text of the policy goes on:

1. In the event of staff reductions, the contract of separated person[n]el[ ] will be terminated in accordance with present statutes, fair dismissal procedures and District procedures established herein.

2. Present and future staffing and educational needs of the district at the time of the R.I.F. will be of paramount consideration as the superintendent identifies these specific positions for the Board. The selection of the teacher(s) to be nonrenewed because of reduction in force shall be in accordance with the following criteria:

   a. Attrition, including retirements and resignations, shall be relied on to the extent possible.

   b. In times of extreme necessity, elective programs and support services shall be reduced or eliminated before basic classes.

   c. When attrition, resignations, and program reduction/elimination is not sufficient to alleviate the necessity for reduction in force, then the policy of the District shall be to retain those teachers with greatest adaptability to meet the present and future staffing and educational needs of the District.

   d. When two teachers within the same area of certification are deemed to be of equal adaptability to meet the present and future staffing needs of the district, then the teacher with the superior academic and professional preparation, beyond minimum certification requirements in his or her teaching field, shall be retained.

3. Separated personnel shall be placed on a notification of openings list for one year following termination of their contracts. No commitment to re-employ is made. . . .

Because there was a necessity for reduction in force, the Superintendent evaluated all elementary teachers and recommended that Kent be separated.

Kent was notified that her teaching contract would not be renewed. At that time, Kent was gone, finishing a two-year leave of absence to accompany her husband for his work at Grand Forks Air Base. Kent requested a hearing. After a hearing with Kent and her representative, the school board voted not to renew Kent's teaching contract.

Before the next school term began, another teaching position became vacant. The District advertised for a fourth grade teacher who could also coach. Because Kent was neither trained nor experienced in coaching, she was not considered when she sought the open position.

Kent sued the District for wrongful dismissal, alleging that the District failed to properly apply the reduction-in-force policy, and for sex discrimination, alleging that the District combined coaching with the fourth grade position "in an obvious effort

to exclude" her. The District denied any wrongdoing.

After a trial without a jury, the trial court concluded that the District followed the proper procedures and did not abuse its discretion in deciding not to renew Kent's teaching contract. The trial court also concluded that Kent's claim of sex discrimination was "without factual basis." The trial court dismissed Kent's complaints.

On appeal, Kent argues that the Superintendent used improper criteria in selecting Kent for nonrenewal, that the board unduly relied upon the Superintendent's recommendation, and that the District did not follow its policy for a reduction in force. Kent also claims that the District illegally discriminated against her sex by coupling the teacher opening with coaching duties.

Kent complains that the Superintendent rated all of the elementary teachers on six qualities other than "adaptability to meet the present and future staffing needs of the district," the only relevant criterion stated in the policy. The other six qualities were academic preparation, teacher evaluations, extra curricular assignments, health and attendance, contribution to school, and seniority. The Superintendent was new, did not know Kent personally, and evaluated her qualities only from her records at the school. On his assessment of all elementary teachers, Kent rated lowest. At the trial, the Superintendent had difficulty explaining how he had "scored" some of the qualities. Also, it came out that the board did not know at the hearing that the Superintendent had ranked the elementary teachers on all seven qualities before recommending Kent's nonrenewal.

Kent complains that the Superintendent violated the RIF policy by using qualities other than adaptability, that he did not satisfactorily explain why he rated Kent so low in adaptability, and that the "board should not be allowed to shield itself from responsibility for the wrong done to the teacher by pleading ignorance...." The trial court was not persuaded that these circumstances demonstrated arbitrary action, either by the Superintendent or by the board, in deciding not to renew Kent's contract. Neither are we.

■ The District points out that the RIF policy "in no way restricts what may be considered in determining adaptability." The trial court regarded the term "adaptability" as largely subjective, and ruled that the policy did not "restrict what can be considered when reviewing adaptability." The trial court concluded that the applicable statute, NDCC 15–47–38, did not specify the criteria to be used in comparing teachers for a reduction in force, nor require the board to state its reasons for selecting one teacher over another in reducing staff for financial reasons. We agree. *See Reed v. Edgeley Public School District No. 3*, 313 N.W.2d 775 (N.D.1981); *Belcourt v. Fort Totten Public School District*, 454 N.W.2d 703, 707 (N.D.1990). As long as the information used by the Superintendent had some reasonable relevance to the teacher's qualities and qualifications, we cannot say that the Superintendent wholly failed to substantiate his reasons for recommending Kent's separation to reduce staff for financial reasons.

■ "[I]t is the school board's comparison of [Kent's] qualifications with the other teachers which is significant rather than the [Superintendent's] comparison." *Law v. Mandan Public School District*, 411 N.W.2d 375, 380 (N.D.1987). As in *Law*, 411 N.W.2d at 380, the record of this hearing reflects that the school board was made aware of Kent's certification, experience, and qualification, in comparison to the other elementary teachers. The board understood that Kent was one of two elementary teachers who were only certified to teach elementary grades one through eight, while the other nine teachers each had an additional certification. We conclude that the board had sufficient information about Kent's qualities and qualifications, as well as the District's lack of funds, to determine in good faith that the reasons given for Kent's nonrenewal were substantiated.

The trial court found that, "[w]hile the school board members ... relied to some extent upon the superintendent's recommendations, they did not rely solely upon

[his] recommendation." Kent does not fault the board for "receiving and considering" the recommendation of the Superintendent. Indeed, Kent concedes that was proper.

Rather, Kent cites one ruling in *Baker v. Minot Public School District No. 1*, 253 N.W.2d 444, 450 (N.D.1977), to support his argument: "[O]ne, if not two, of the Board members based their decision on the school administrator's 'recommendation, rather than upon the evidence before the Board, as is required by law; . . . ." Using that precedent, Kent faults the board for giving the Superintendent's recommendation "binding effect without seeking and obtaining the basis for the recommendation." We are not persuaded.

This case is similar to *Law v. Mandan Public School District.* The Mandan District had a policy that directed a staff reduction to "[r]etain[ ] the strongest teachers" based on seven criteria, including "[a]daptability to other assignments." 411 N.W.2d at 378. The policy also declared "preference in retention will be given to teachers with the longest district service," when the teachers compared "are judged to be similarly qualified." *Id.* Law, who taught building trades, was nonrenewed because of declining enrollment, although other industrial arts teachers with less service were kept. Kent argues, much as Law did, that she had the longest tenure and was the highest paid elementary teacher, implying that the Superintendent and board acted with an ulterior motive, and thus arbitrarily, to eliminate her higher-cost contract.

In *Law,* we affirmed the trial court's holdings that the Mandan District followed its policy and acted reasonably in not renewing Law's teaching contract. We concluded that a written policy contracted additional obligations for the school district to observe in separating a teacher for financial reasons, but that neither the policy nor the nonrenewal statute required the school board to express its reasons for selecting one teacher over another for nonrenewal.

Sawyer's policy contracts fewer criteria to be considered than did Mandan's policy.

Like the Mandan policy, Sawyer's policy does not dictate that the school board explain its reasons for nonrenewing a teacher separated for financial reasons.

▮ The trial court determined that the board followed the reduction-in-force policy in "compar[ing] all of the elementary school teachers in the District including Mrs. Kent," and that, "after reviewing all of the evidence," the board decided that Kent was the least adaptable of the elementary teachers. Since the board properly applied the policy and followed the statutory procedure, we agree that the board did not abuse its discretion or act arbitrarily in not renewing Kent's contract.

▮ Kent argues that combining coaching duties with the fourth-grade teaching position was designed to exclude her from consideration for the subsequent opening, and was therefore sex discrimination. Kent argues that, "when the position was offered in such a way to tie it to a male coaching position, it meant that virtually no woman could qualify." She argues that the statute "prohibits certain acts even if they were done without intent," barely referring to NDCC 14–02.4–03 and *Moses v. Burleigh County*, 438 N.W.2d 186 (N.D. 1989), and omitting any analysis about how those references support her argument.

The trial court found:

Tracy Ross, whose resignation had created the fourth grade vacancy, had been a basketball coach. Steve Volmer, who was ultimately hired as the fourth grade teacher and coach had a degree in physical education and previous coaching experience. Mrs. Kent did not have a degree in physical education and had no coaching experience. The newly hired home economics teacher was a woman who was assigned coaching duties. The history of hiring practices of the School District provided no credence for Mrs. Kent's theory that coaching duties were assigned to the fourth grade position for the purpose of eliminating female applicants. There is nothing in the record to reflect a pattern of excluding qualified

females from coaching positions by reason of their sex.

From these findings, the trial court concluded that Kent's "allegations of sex discrimination are without factual basis."

Kent does not try to attack or explain the explicit finding that there was no intentionally disparate treatment. Nor does Kent marshall any statistical evidence to show a disparate impact, or cite any comparable precedent to advance her discrimination claim. Therefore, we conclude that her sterile allegations of sex discrimination are without merit.

We affirm.

ERICKSTAD, C.J., and MESCHKE and VANDE WALLE, JJ., concur.

VANDE WALLE, Justice, concurring.

I agree with the opinion written for the Court by Justice Meschke. I write separately to express my uneasiness about the opening which subsequently arose and for which the school board determined Kent was not qualified because it was coupled with a coaching position. That issue was pled and argued as an issue of sex discrimination. But, it may reflect on the good faith of the school board in the first instance in selecting Kent as the teacher whose contract would not be renewed because of budget deficits and declining enrollments. That is particularly true here in that the coaching position that was open was the varsity coach for boys basketball. As it turned out, the assistant varsity coach assumed that position and other arrangements were made to shift coaching duties among the faculty, although the person hired for the open position was qualified to coach and did act as assistant coach. Nevertheless, the record does not reflect that any significant attempts to shuffle the coaching positions was made before advertising for the vacancy.

In a concurring opinion in *Fercho v. Montpelier Pub. Sch. Dist. No. 14*, 312 N.W.2d 337 (N.D.1981), I expressed my concern in these words:

"I believe that in the future school boards which do not renew a teacher's contract because of financial distress but create other full-time or part-time positions for which a nonrenewed teacher is qualified should 'go the last mile' and affirmatively offer the nonrenewed teacher the newly created position. Such affirmative action on the part of the school board will be persuasive, at least to me, in instances in which it is alleged that the school board did not act with fairness and decency or that the school board had ulterior motives in not renewing the teacher's contract." *Fercho, supra*, at 342 (VandeWalle, J., concurring specially) *see also Quarles v. McKenzie Public School Dist. No. 34*, 325 N.W.2d 662 (N.D.1982).

The same rationale is applicable to vacancies for which the teacher is qualified. I do not intend to second-guess the fact finder on an issue which was not the focus of the trial. Nevertheless, it appears to me that there was little, if any effort, to arrange the coaching duties so that Kent could have had an opportunity to apply for the vacant position for which she was otherwise qualified. That should be a primary concern of all school boards when releasing veteran teachers because of declining enrollments and budget deficits. Anything less opens the school board's determination to nonrenew a veteran, and presumably more highly paid, teacher to allegations of ulterior motives.

JOHNSON, J., concurs.

LEVINE, Justice, concurring.

I dissented in *Law v. Mandan Public School Dist.*, 411 N.W.2d 375 (N.D.1987), because Law's credentials and experience were not compared with other teachers'. Here, I am satisfied that the record establishes the fact that the school board was informed of Kent's certification, experience and qualification in comparison to the other elementary teachers. Therefore, I join the majority.

I also agree with Justice VandeWalle's concurrence, sharing his concern over the school board's cavalier disregard of its obligation to rehire Kent, if possible, illustrated by its failure to accommodate Kent in

filling the vacant position by rearranging coaching duties. However, as Justice VandeWalle observes, the issue was neither argued nor litigated and so we have no occasion to resolve it.